IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL BROWN,

    Plaintiff,

v.

MAXIMUM EFFICIENCY SQUARED, LLC,
d/b/a Bullock County Hospital

    Defendant.

Civil Action No. 2:07CV889-mef

JURY TRIAL DEMANDED

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 216(b) and 217 and 28 U.S.C. § 1331, and pursuant to 42 U.S.C. §1981. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by §1981. An Opt-in Collective Action is sought under FLSA 16(b).

1

## II. PARTIES

2. Plaintiff, Michael Brown, (hereinafter Plaintiff), is a resident of the State of Alabama and performed work for the Defendant in the counties composing the Middle District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus pursuant to 28 U.S.C.§ 1391(b), venue for this action lies in the Middle District, Northern Division.

3. Defendant Maximum Efficiency Squared, LLC d/b/a Bullock County Hospital (hereinafter Defendant) is a corporation registered to do business in the State of Alabama. Therefore, this Court has personal jurisdiction over Defendant. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(f).

## III. STATEMENT OF FACTS

4. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-3 above.

5. Plaintiff began work with Defendant in June, 2004 as a nurse. Plaintiff served in that position until approximately May, 2006 when he became a nurse manager.

6. At all times during Plaintiff's employment, he was employed as an hourly, non-exempt employee.

2

7. Up until the time Plaintiff became nurse manager, he worked a 7:00 a.m. to 7:00 p.m. shift; three days one week and four days the next, although Plaintiff often worked extra hours.

8. Plaintiff regularly worked over forty hours in a work week and was paid some of his hours in excess of forty at 1.5 times his regular hourly rate.

9. Defendant automatically deducts thirty minutes for lunch, while not fully relieving Plaintiff and other similarly situated employees from the work duties and work stations. As a result, Plaintiff and other similarly situated employees are regularly interrupted during their unpaid lunch period.

10. Plaintiff and other similarly situated employees would begin work as soon as they clocked in, which would be before the official start of their shift. Defendant did not properly apply "rounding" in accord with 29 C.F.R. 785.48(b).

11. At the end of his scheduled shift, Plaintiff and other similarly situated employees worked past the end of the scheduled shift, yet are not paid for all hours worked in excess of forty in a work week, since Defendant did not properly apply "rounding" in accord with 29 C.F.R. 785.48(b).

**V.   COUNT ONE – FLSA VIOLATIONS**

12. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 11 above as if fully set forth herein.

3

13. Defendant has violated the FLSA in regards to Plaintiff and other similarly situated employees in the following regards:

- Automatically deducting thirty minutes for an unpaid lunch, without fully relieving Plaintiff and other similarly situated employees from their job duties and work station during the unpaid lunch.

- Working Plaintiff and other similarly situated employees "off the clock" pre shift and post shift.

- Record keeping violations.

14. Defendant has willfully failed to comply with the provisions of the FLSA, and the regular applicable regulations requiring payment at 1.5 times an employee's regular hourly rate for all hours worked in excess of forty in a work week because of the above referenced violations of the FLSA.

15. Plaintiff and other similarly situated employees have been damaged as a result of Defendant's violation of the FLSA, suffering loss of pay.

### VI. COUNT TWO – OPT-IN COLLECTIVE ACTION

16. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 15 above as if fully set forth herein.

17. Plaintiff brings this suit as an opt-in collection action pursuant to the FLSA 16(b).

18. Defendant employed approximately 150 employees and other positions performing similar job functions as Plaintiff at any one time for three years preceding the filing of this complaint. There has been substantial turnover of the similarly-situated employees of Defendant during the last three years.

19. The potential class is comprised of any and all persons employed by Defendant at its Union Springs facility and performing pre-shift and/or post-shift duties without being paid at any time during the three (3) years preceding the filing of this Complaint.

20. Upon information and belief, Defendant has refused and is refusing to pay all employees at its Montgomery facility for performing pre-shift and/or post-shift duties, as set forth above. Therefore, the potential plaintiff class is so numerous that joinder is impracticable.

21. Upon information and belief, the practices alleged in the aforementioned paragraphs comprise violations of the FLSA against other employees, thereby presenting both common questions of law and fact common to the class.

22. Upon information and belief, the claims of the representatives are typical of claims of the class. Plaintiffs were subjected to the same unlawful employment practices concerning inaccurate reporting of time, failure to pay wages, and other violations of the FLSA, as were other members of the class.

23. Upon information and belief, Plaintiffs will fairly and adequately protect the interest of the class in that they share common interests with the other members of the class and have employed counsel who will vigorously prosecute the interests of the class.

24. Upon information and belief, the questions of law and fact common to the members of the class predominate over any questions affecting only individual members as the same practice of employing class members without paying them in accord with the FLSA was used by Defendant on all class members.

25. Upon information and belief, this collective action is superior to other available methods to the fair and efficient adjudication of the controversy because of the large number of potential plaintiffs; because of the relatively moderate amount of damages available to Plaintiffs were they to commence an individual action; and, because of the predominate factual and legal questions common to all class members.

### VII.   COUNT THREE – RECORD KEEPING

26. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 25 above as if fully set forth herein.

27. Defendant has failed to keep records accurately reflecting all times worked by Plaintiff and other similarly situated employees "off the clock" in violation of the FLSA.

28. Defendant's violations are in will disregard of that statute.

29. Plaintiff and other similarly situated employees have been damaged as a result of Defendant's illegal actions by suffering loss of pay.

## VIII. COUNT FOUR – RACE DISCRIMINATION (§1981)

30. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 29 above as if fully set forth herein.

31. Plaintiff began work with Defendant in June, 2004. At the time of Plaintiff's termination on May 14, 2007, he held the position of Nurse Manager. At all times during Plaintiff's employment, he performed his job duties in at least a competent manner.

32. On January 26, 2007, Plaintiff filed a complaint with the HR Department of Defendant on a number of matters dealing with his supervisor. Plaintiff concluded his complaint by expressing the belief that "race may be a factor." There was no written response to Plaintiff's complaint.

33. On May 1, 2007, a subordinate, who was mad at Plaintiff for reasons related to scheduling, impersonated Plaintiff's wife and called a subordinate's husband, making inappropriate comments. The subordinate, Barbara Stinson, came to Plaintiff about the matter. Plaintiff followed Defendant's procedures and reported it to management, the Director of Nursing.

34. After reporting the incident, both Ms. Stinson and Plaintiff was placed on administrative leave, not because of anything either one of us did wrong, but for the claimed reason so that management could conduct an investigation.

35. On May 10, 2007, Plaintiff returned from administrative leave. At that time, Plaintiff was presented with an "action plan for improvement" by Ben Busbee, Hospital Administrator and Charles Harbaugh, HR Manager. The topics discussed in the "action plan" were created during an investigation of Plaintiff with his subordinates while he was out on administrative leave for no reason. No other managers were singled out and treated this way.

36. The "action plan" called for Plaintiff to be even-handed with his subordinates, but was related to Plaintiff as not being disciplinary in nature. Plaintiff asked for and received permission to file a written response to the action plan by 8:30 a.m. Monday, May 14, 2007.

37. Plaintiff was called at home to handle an early shift on May 14, 2007. Plaintiff left word on the voice mail of the DON that he could not do so until after his meeting with Busbee and Harbaugh. Plaintiff further left word that after that meeting, he had intended on going to Birmingham to file a charge with the EEOC.

8

38. Plaintiff arrived for the meeting with Busbee and Harbaugh on May 14, 2007 at 8:15 a.m. Plaintiff had signed the action plan and prepared his response. Harbaugh was not present. When Plaintiff asked Busbee where Harbaugh was, he said that he had returned to Montgomery because they thought that Plaintiff was headed to Birmingham to file with the EEOC. Plaintiff drove to Harbaugh's office in Montgomery.

39. Harbaugh kept Plaintiff waiting for an hour. When he finally met with Plaintiff, he brought in a Vice President of Human Resources, Brad Eiseman. Plaintiff told Harbaugh he would sign the document, but Harbaugh refused to take it. Harbaugh began yelling at Plaintiff and telling Plaintiff that he was terminated and not welcome back in the hospital. When Plaintiff told him he had signed the document, he yelled at Plaintiff that it would not change, because Plaintiff was terminated.

40. During the course of Plaintiff's employment, he was singled out and treated differently because of his race by Defendant.

41. On January 26, 2007, Plaintiff filed a complaint with the HR Department of Defendant on a number of matters dealing with difference of treatment by a supervisor. The complaint concluded with the express belief that "race may be a factor." Defendant never responded to Plaintiff's complaint and

9

upon information and belief did not conduct an investigation in regards to the complaint.

42. Plaintiff was placed on administrative leave on May 1, 2007 based upon the false claim of a subordinate. The subordinate was not disciplined for the false claim.

43. On May 10, 2007, Plaintiff returned from his administrative leave and was placed on an "action plan" for job performance issues, that were created by Defendant during Plaintiff's administrative leave.

44. Defendant did not follow its progressive discipline policy in regards to Plaintiff by placing him on this action plan. Plaintiff had not been warned of any deficiencies in job performance prior to this requirement of the "action plan."

45. Many of the accusations in the action plan were simply inaccurate, yet Defendant was not interested in Plaintiff's response.

46. Plaintiff was singled out and treated differently than other, white managers in regards to discipline and the termination of his employment in violation of §1981.

47. As the result of Defendant's intentional violation of §1981, Plaintiff has been damaged and been caused to suffer mental anguish.

### IX.  COUNT FIVE -- RETALIATION (§1981)

48.    Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 47 above as if fully set forth herein.

49.    On January 26, 2007, Plaintiff filed a complaint with the HR Department of Defendant on a number of matters dealing with his supervisor. Plaintiff concluded his complaint by expressing the belief that "race may be a factor." There was no written response to Plaintiff's complaint.

50.    On May 1, 2007, a subordinate, who was mad at Plaintiff for reasons related to scheduling, impersonated Plaintiff's wife and called a subordinate's husband, making inappropriate comments. The subordinate, Barbara Stinson, came to Plaintiff about the matter. Plaintiff followed Defendant's procedures and reported it to management, the Director of Nursing.

51.    After reporting the incident, both Ms. Stinson and Plaintiff was placed on administrative leave, not because of anything either one of us did wrong, but for the claimed reason so that management could conduct an investigation.

52.    On May 10, 2007, Plaintiff returned from administrative leave. At that time, Plaintiff was presented with an "action plan for improvement" by Ben Busbee, Hospital Administrator and Charles Harbaugh, HR Manager. The topics discussed in the "action plan" were created during an investigation of Plaintiff with

11

his subordinates while he was out on administrative leave for no reason. No other managers were singled out and treated this way.

53.    The "action plan" called for Plaintiff to be even-handed with his subordinates, but was related to Plaintiff as not being disciplinary in nature. Plaintiff asked for and received permission to file a written response to the action plan by 8:30 a.m. Monday, May 14, 2007.

54.    Plaintiff was called at home to handle an early shift on May 14, 2007. Plaintiff left word on the voice mail of the DON that he could not do so until after his meeting with Busbee and Harbaugh. Plaintiff further left word that after that meeting, he had intended on going to Birmingham to file a charge with the EEOC.

55.    Plaintiff arrived for the meeting with Busbee and Harbaugh on May 14, 2007 at 8:15 a.m. Plaintiff had signed the action plan and prepared his response. Harbaugh was not present. When Plaintiff asked Busbee where Harbaugh was, he said that he had returned to Montgomery because they thought that Plaintiff was headed to Birmingham to file with the EEOC. Plaintiff drove to Harbaugh's office in Montgomery.

56.    Harbaugh kept Plaintiff waiting for an hour. When he finally met with Plaintiff, he brought in a Vice President of Human Resources, Brad Eiseman. Plaintiff told Harbaugh he would sign the document, but Harbaugh refused to take

12

it. Harbaugh began yelling at Plaintiff and telling Plaintiff that he was terminated and not welcome back in the hospital. When Plaintiff told him he had signed the document, he yelled at Plaintiff that it would not change, because Plaintiff was terminated.

## X. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray for the following relief:

A. The Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in the Complaint;

B. The Court issue judicial notice for potential class members to opt-in under the FLSA or, in the alternative, that the Court will certify the class for this action;

C. This Court award Plaintiff and other similarly situated employees and former employees of Defendant the amount of their unpaid wages, plus an additional equal amount as liquidated damages;

D. Enter an Order requiring Defendant to make Plaintiff whole by awarding him compensatory, punitive damages and liquidated damages, injunctive and declaratory relief and benefits;

E. That Plaintiff be granted judgment against Defendant for all reasonable attorneys' fees, costs, disbursements and interest; and

F.   For such other and further relief as this Court deems equitable, proper and just.

Respectfully submitted,

_____
David R. Arendall

_____
Allen D. Arnold
Counsel for Plaintiff

OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, AL 35203
205.252.1550 – Office
205.252.1556 – Facsimile

PLAINTIFFS REQUEST A TRIAL BY STRUCK JURY.

_____
Of Counsel

SERVE DEFENDANT AT:

Maximum Efficiency Squared, LLC
d/b/a Bullock County Hospital
c/o Vicki Lawrenson
Agent for Service of Process
5950 Carmichael Place, Suite 100
Montgomery, AL 36117

```
DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000645
Cashier ID: khaynes
Transaction Date: 10/04/2007
Payer Name: ARENDALL LAW FIRM
------------------------------------
CIVIL FILING FEE
 For: ARENDALL LAW FIRM
 Case/Party: D-ALM-2-07-CV-000889-001
 Amount:         $350.00
------------------------------------
CHECK
 Check/Money Order Num: 10476
 Amt Tendered: $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

MICHAEL BROWN V. MAXIMUM EFFICIENCY
SQUARED, LLC

2:07-CV-889-MEF-WC
```