# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL BROWN, et al.**, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:07-CV-889-MEF** |
| **MAXIMUM EFFICIENCY** | ) | |
| **SQUARED, LLC, d/b/a Bullock** | ) | |
| **County Hospital,** | ) | |
| | ) | |
| **Defendant.** | | |

## DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION

Defendant Maximum Efficiency Squared, LLC ("MES") files this brief in response to Plaintiffs' Motion for Conditional Class Certification and To Facilitate Court-Approved Notice Under 29 U.S.C. §216(b). (Doc. 19). In response thereto, MES shows the following:

## I. INTRODUCTION

The three Plaintiffs in this Fair Labor Standards Act ("FLSA") collective action seek to have the Court conditionally certify a class of all hourly employees of MES at Bullock County Hospital from October 4, 2004 to the present (approximately 230 persons), based on the Plaintiffs' allegations that, on occasion, they worked "off-the-clock" before their shift, during lunch, or after their shift.

953042.4

The Court should deny Plaintiffs' motion because (1) Plaintiffs have presented insufficient evidence that they are similarly situated to the proposed class members they seek to represent, (2) Michael Brown, the lead Plaintiff, was a supervisory employee who participated in the payroll and time-keeping process and, therefore, cannot represent a class including non-supervisory employees without creating a conflict of interest, and (3) litigating this case as a collective action would be anything but efficient because of the individualized factual assessment needed for each and every individual for each and every alleged violation of the FLSA's overtime requirements.

## II. FACTUAL BACKGROUND

### A.     Job Classifications and Time-Keeping at Bullock County Hospital

Since December 2004, MES has employed approximately 249 persons at Bullock County Hospital ("BCH"). (Exh. A, Harbaugh Decl. ¶ 3). There are at least 51 different job classifications at BCH. Each job classification has job-specific duties and responsibilities. (Exh. A, Harbaugh Decl. ¶ 6). Although several similar job classifications exist in numerous departments of the hospital, each department has its own supervisors, and the practices within each department vary depending on the particular management styles of each supervisor or the specific nature of the work performed in that particular department. (Id.) For example, employees in the Emergency Room division of the hospital are subject to

different practices, based on the necessity for immediate patient care, than employees in similar positions in, for example, the Radiology Department. (Id.) Accordingly, a particular job classification (i.e., Unit Clerk or Patient Care Technician) in one department may be subject to different policies, procedures and practices than the same job classification in another department.  (For a list of departments and job classifications, see Exh. A, Harbaugh Decl.  ¶ 6).

Except for employees in the Home Health Department, hourly employees at BCH use a time clock.  (Exh. A, Harbaugh Decl. ¶ 7).  There is one time clock used at BCH, which is centrally located on the main level of the hospital.  (Id.) The time clock was installed prior to MES's tenure at BCH.  (Id.)

MES has procedures for ensuring that time records are accurate.  (Exh. A, Harbaugh Decl. ¶ 9).  For example, employees may forget to clock in or clock out or they may choose, or be unable, to take lunch on some days.  In such situations, employees have the opportunity and responsibility to make notations to their time card to adjust for time worked but not initially reflected on the time card.  (Id.) Employees are aware of this policy of making notations to time cards to accurately reflect their time worked—MES has communicated it to them formally through an employee handbook and informally through supervisors many times. (Exh. A, Harbaugh Decl. ¶ 9).

In addition to time cards and notations to these time cards, the department supervisor completes a time sheet which is sent to payroll, approving or disapproving of the time card notations. (Exh. A, Harbaugh Decl. ¶ 9). The payroll department then reviews the time sheets to determine accuracy. Corrections can occur at any point in this process. (Id.)

The time clock records punches in one minute increments. (Exh. A, Harbaugh Decl. ¶ 7). For purposes of calculating hours worked during a day, the time clock's computer program "rounds" time punches to the nearest 15 minute interval. (Id.) For example, if an employee clocks in at 8:06, the time clock recognizes the employee's start time as 8:00 for purposes of calculating hours worked. However, if that same employee clocks in at 8:08, the clock recognizes 8:15 as the start time. (Id.) The same rounding practices apply at the conclusion of the work day, so that an employee who clocks out at 7:54 would be paid as if working until 8:00, while an employee who clocks out at 8:03 would be paid for working until 8:00. (Id.)

This time clock also automatically deducts 30 minutes for lunch during an eight-hour shift and one hour for a twelve-hour shift. (Exh. A, Harbaugh Decl. ¶ 7). Employees who leave the hospital facility for lunch are required to clock out when they leave and clock back in upon return. (Id.) If an employee clocks out for lunch, 30 minutes is not automatically deducted. (Id.) While thirty minutes is

automatically deducted from an hourly employee's daily time for lunch, employees are directed to make a notation on their time cards if they are unable to take an uninterrupted thirty minutes for lunch.  (Exh. A, Harbaugh Decl. ¶ 8).  If such notation is made, the automatically-subtracted time typically is added back by the appropriate supervisor, barring any unusual circumstances.  (Id.)  Again, it is the employee's responsibility to ensure the validity of his or her own time card.  (Id.)

Since December 2004, employees at BCH have received a copy of the Bullock County Hospital Employee Handbook, a handbook developed and used by the predecessor employer to MES.  (Exh. A, Harbaugh Decl. ¶ 5).  MES does not fully incorporate all policies and procedures set forth in the Employee Handbook. (Id.) Most notably, although the Employee Handbook states that employees are paid overtime based on an 80-hour bi-weekly period, MES never has followed this particular policy.  (Id.)  Instead, overtime is calculated based on a standard 40-hour work week.  (Id.)

### C.    Named Plaintiff Michael Brown

MES employed Michael Brown from May 19, 2004 until May 14, 2007. Brown's initial position was as a Nurse in the Emergency Room ("ER").  (Exh. A, Harbaugh Decl. ¶ 13).    On March 27, 2006, MES promoted Brown to Nurse Manager (a/k/a Charge Nurse) in the ER.   On June 2, 2006, MES transferred Brown to the Gateway and New Hope divisions of the hospital (mental health and

drug rehabilitation units) to act as the Nurse Manager in those divisions. (Id.) As Nurse Manager, Brown had significant supervisory responsibilities, including among others, scheduling, approving overtime and time off for hourly employees, and suggesting discipline or termination when necessary. (Id.) Brown also directed and monitored the job functions of Patient Care Technicians, Licensed Practical Nurses ("LPNs"), and Registered Nurses. (Id., and for a broader list of Nurse Manager responsibilities, see Exh. A, Harbaugh Decl. ¶¶ 13 and 15).

As a Nurse Manager, Brown was responsible for approving the timesheets of the subordinates on his staff–generally Patient Care Technicians, LPNs, and Registered Nurses. (Exh. A, Harbaugh Decl. ¶ 14). As part of this process, Brown was required to review timecards, approve or disapprove of unscheduled time, and transfer the time from timecards to timesheets. (Id.) A review of some timecards indicates that Brown did in fact exercise the authority to approve or disapprove of unscheduled time. (Exh. A, Harbaugh Decl. ¶ 14 and Attachment 2).

### C.    Named Plaintiffs Carold Battle and Judy Davis

MES records indicate that Plaintiff Carold Battle was employed as a Patient Care Technician in the ER, a non-supervisory position. (Exh. A, Harbaugh Decl. ¶ 16). Responsibilities for Patient Care Technicians include taking and recording vital signs, attending to patient hygiene needs and personal care, changing linens, assisting patients with nourishments, communicating observed changes in a

patient's condition, clean up, prep work, and functioning in a clerical role as needed, as well as performing other necessary work. (Id.)

MES records indicate that Plaintiff Judy Davis was employed as a Unit Clerk, a non-supervisory position. (Exh. A, Harbaugh Decl. ¶ 17). Unit Clerks primarily perform clerical work and are dispersed throughout numerous divisions in the hospital. (Id.)

### D.    Putative Opt-Ins

MES records indicate that putative opt-in Christopher France was employed as a Patient Care Technician in the Mental Health Department. (Exh. A, Harbaugh Decl. ¶ 18). Patient Care Technicians in the Mental Health Department have slightly different job responsibilities than a Patient Care Technicians in the ER and other divisions of the hospital. (Id.)

MES records indicate that putative opt-in Marcia Banks was employed as a Unit Clerk. (Exh. A, Harbaugh Decl. ¶ 19). Again, the responsibilities of Unit Clerks are primarily clerical. (Id.)

### III. ARGUMENT AND CITATION TO AUTHORITY

An action under the FLSA for overtime pay may be maintained by "any one or more employees for and in behalf of himself or themselves and any other employees similarly situated." 29 U.S.C. § 216(b). Section 216(b) contemplates court-supervised notice to members of a conditional opt-in class whose scope has

been certified by the court. Whether to certify an opt-in class and what notice to send are decisions committed to the court's sound discretion. <u>Hoffman-LaRoche, Inc. v. Sperling</u>, 493 U.S. 165, 169, 110 S. Ct. 482, 486 (1989).[1] <u>See</u> <u>also</u> <u>Reed v. Mobile County School Sys.</u>, 246 F. Supp. 2d 1227, 1230-31 (S.D. Ala. 2003).

Plaintiffs bear the burden of proving the appropriateness of class notice. In other words, nothing in 29 U.S.C. § 216(b) or relevant case law acts as a warrant for this Court to issue a blank check for Plaintiffs to send out notice to every hourly employee at BCH. Even at this stage of the litigation, the Court must scrutinize the proposed class and notice. First, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only later to determine that the matter should not proceed as a collective action . . . ." <u>Freeman v. Wal-Mart Stores, Inc.</u>, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). <u>See</u> <u>also</u> <u>West v. Border Foods, Inc.</u>, 2006 WL 1892527, at *7 (D. Minn. July 10, 2006) ("[N]either the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper."). Second, "[t]he courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." <u>D'Anna v. M/A-COM, Inc.</u>, 903 F. Supp. 889, 894 (D. Md. 1995) (citation omitted); <u>see</u> <u>also</u> <u>Holt v. Rite Aid Corp.</u>, 333 F. Supp. 2d

---

[1] <u>Hoffman-LaRoche</u> involved an ADEA collective action, brought as a § 216(b) action pursuant to the ADEA's express statutory adoption of § 216(b) of the FLSA.

1265, 1275 (M.D. Ala. 2004).    Finally, "an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense."    D'Anna, 903 F. Supp. at 894.    Thus, the Court should scrutinize Plaintiffs' request because "[t]he Court's responsibility to intervene in the management of this litigation began when the case was filed."    Freeman, 256 F. Supp. 2d at 945.    As will be set out more fully below, Plaintiffs' Motion is due to be denied.

**A.    Plaintiffs Are Not Similarly Situated to the Members of the Proposed Class**

The Eleventh Circuit has suggested that district courts evaluate the appropriateness of § 216(b) class certification in two stages—a notice stage and a decertification stage.    Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218-19 (11th Cir. 2001).    At the notice stage, which is applicable here, Plaintiffs' burden, while not heavy, is not minimal, either.    See Reed, 246 F. Supp. 2d at 1236 ("the burden on the plaintiffs is described as 'not heavy,' a relaxed burden but not a 'minimal' one.").    Even at the notice stage a plaintiff must provide substantial allegations of class-wide violations.    Id.    Specifically, a plaintiff must demonstrate: (1) that there are other employees who wish to opt-in;[2] and (2) these employees are

---

[2] In Tyler v. Payless Shoe Source, Inc., this Court determined that evidence of three potential opt-in plaintiffs was sufficient to demonstrate class interest at the conditional certification stage of an FLSA action when the putative class potentially included employees from approximately 4,800 different facilities.    Tyler v. Payless Shoe Source, Inc., Civil Action No. 2:05-cv-33-F, 2005 U.S. Dist. LEXIS 31682 at *7-*8 (M.D. Ala. Nov. 23, 2005).    Here, there are three

similarly situated.  See Dybach v. State of Florida Dept. of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

Although a plaintiff need not point to a particular plan or policy to show that he and the proposed class are similarly situated, "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, *beyond the mere facts of job duties and pay provisions*."  Holt, 333 F. Supp. 2d at 1270 (emphasis added) (citations omitted); Horne v. United Servs. Auto. Assoc., 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003) (same).  "Without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse."  Holt, 333 F. Supp. 2d at 1270.  Moreover, "the burden is on the plaintiffs to make an evidentiary showing that they and the proposed class are similarly situated, *not on the defendant to disprove such similarity*."  Reed, 246 F. Supp. 2d at 1232 (emphasis added).

Here, Plaintiffs seek conditional class certification of all hourly employees of MES at BCH from October 4, 2004 to the present, based on three allegedly unlawful policies or practices that are alleged to be uniformly applied to all

---

plaintiffs and two potential opt-ins.  While five out of 230 potential class members is only approximately 2.1% of the putative class, this appears to be sufficient based on the Tyler decision.  On the other hand, a collective action is inappropriate here because, as set forth in Tyler, case-by-case, fact-specific inquiries are inappropriate for collective actions and do not further the interests of judicial economy.

employees: (i) an 80-hour bi-weekly pay period that fails to pay daily overtime after eight hours; (ii) a practice of requiring hourly employees to work pre- and post-shift "on an occasional basis" without pay; and (iii) a practice of requiring hourly employees to work off the clock on "an occasional basis" during their automatically deducted thirty minute lunch break. As illustrated below, none of these alleged "uniform" policies are sufficient to prove that all hourly employees are similarly situated.

## 1.    MES Does Not Utilize an 80-Hour Work Week

Although Plaintiffs' counsel points to a written policy found in the Employee Handbook that states that overtime is paid based on an 80-hour bi-weekly period, MES has never adopted or applied such a policy at BCH. Noticeably, none of the Plaintiffs or putative opt-ins allege in their declarations that they were subjected to an 80-hour pay period. Needless to say, Plaintiffs cannot claim that they are similarly situated to other employees based upon a policy that does not exist.

## 2.    Other Employees are Not Similarly Situated Because "Off-the-Clock" Claims Require Individualized Assessments

The two other alleged unlawful practices both involve so-called "off-the-clock" allegations. Plaintiffs claim that they were not compensated for time spent working immediately prior to or after their shift, although they have not provided any evidence of why they were not compensated for such time. Based on the

complaint in this case, it appears that Plaintiffs allege that MES had an unlawful practice of "rounding" their time punches, which they apparently contend results in employees not being paid for time worked shortly before and after their shifts. Plaintiffs' second off-the-clock claim is that they occasionally worked during their lunch period but were not paid for such time because MES had a policy of automatically deducting 30 minutes for lunch time. As set forth below, neither of these allegations demonstrates a common scheme or practice sufficient to justify class certification or notice. To the contrary, they would require an intensive, day-by-day, plaintiff-by-plaintiff factual analysis of each and every claim of unpaid time.

First, despite Plaintiffs' apparent contentions, neither the rounding practice nor the lunch deduction is presumptively unlawful. MES's "rounding" policy clearly complies with 29 C.F.R. §785.48(b), which allows employers to round to the nearest 15 minute increment, provided that the rounding practice is designed to balance out over time. MES's policy rounds both "up" and "down" such that it adds and subtracts time from hours worked. See e.g. East v. Bullock's, Inc., 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998) (similar 15-minute rounding rule approved where practice overpaid and underpaid plaintiff). Likewise, there is nothing presumptively unlawful about a policy that directs employees to take a 30 minute

lunch and automatically deducts 30 minutes instead of requiring employees to punch in and out on a time clock.  See 29 C.F.R. 785.19(a).

Second, Plaintiffs do not allege that MES had a regular practice of unlawfully deducting time or making all employees work "off-the-clock." Instead, they allege that "on occasion" or "at times" Plaintiffs either worked before shift, after shift, or during lunch without compensation.  In other words, this purported practice was anything but a practice—it was sporadic, not regular or repeated.  And Plaintiffs have produced absolutely no evidence that on the occasions during which they worked off-the-clock that other employees also were required to work off-the-clock.  In short, there is no evidence that other employees were similarly situated.

Moreover, Plaintiffs do not attempt to address the fact that they and other employees have been compensated for time spent working before or after shift or during lunch when they reported such work or recorded it on their time cards.  As set forth above, MES's policies were designed to make sure that employees were fully compensated for the time they worked.  If employees worked prior to the start of their shift, after their shift,[3] or during lunch, they could simply make a notation to that effect on their time card and submit it to their supervisor to ensure that they were fully compensated.

---

[3] MES schedules employees' shifts so that they overlap by thirty minutes in an effort to avoid the need for pre- and post-shift work.  (Exh. A, Harbaugh Decl. ¶ 12).

Finally, all of these variables—a lack of an unlawful policy or practice, sporadic instances of alleged FLSA violations, corrections of alleged violations, different practices in different departments, etc.—demonstrate precisely why class certification and notice are inappropriate in this case.  With respect to pre-shift and post-shift work, for each Plaintiff or putative plaintiff, the parties would have to assess whether, for a particular day, the individual actually worked either before or after their shift (as opposed to simply clocking in early or late and not working) and made or attempted to make a correction to the individual's time sheet or otherwise was compensated for the time.  That analysis inevitably would turn on the practices in a particular department or by a particular supervisor, and on the work practices of the individual plaintiff.  Likewise, the question of whether an individual employee was not paid during a lunch period would turn on a day-by-day assessment of the actions of the particular individual during lunch.  Inquiries likely would include, among others (i) whether the individual ate in the lunch room or at her desk; (ii) did she answer the phone and if so, for how long did she talk; (iii) did patients enter the area; (iv) how long was she allowed to eat without an interruption; and (v) did she report the interruption or make a notation to her time card.  Such individualized inquiries are inappropriate for collective actions.  See Tyler, 2005 U.S. Dist. LEXIS 31682 at *19-*20 (finding that a plaintiff fails to

meet requirements for conditional class certification when the evidence presented requires a fact-specific, case-by-case inquiry by the Court).

MES further notes that broad classes such as the one proposed by the Plaintiffs have been deemed inappropriate by courts. For example, in <u>Reed v. Mobile County School Sys.</u>, 246 F. Supp. 2d 1227, 1231 (S.D. Ala. 2003), the trial court denied the plaintiffs' motion for conditional class certification and issuance of court-supervised notice—at the notice stage—where the proposed class was identified as "all non-exempt employees of the defendant" who may have been owed overtime compensation. In denying conditional certification, the court pointed out that no broader class under the FLSA could have been identified:

> . . . the Court rejects any suggestion that, as a matter of law, every non-exempt employee is necessarily similarly situated to every other non-exempt employee of the same employer. Were this proposition true, no evidence would ever be required to satisfy the similarly situated requirement in the FLSA context; yet the courts have made plain that such evidence is required.

<u>Reed</u>, 246 F. Supp. 2d at 1231. <u>See also</u> <u>MacKenzie v. Kindred Hosp. East, L.L.C.</u>, 276 F. Supp. 2d 1211, 1221 (M.D. Fla. 2003) (describing as "overbroad" proposed class not limited by job titles, job duties, location, or time period).

Rather than accepting the plaintiff's proposed class on its face, the court in <u>Reed</u> used four factors to assess whether the similarly situated requirement had been met: (1) whether the present and prospective plaintiffs all held the same job

titles; (2) whether the present and prospective plaintiffs worked in different geographic locations; (3) the extent to which the claimed violations occurred during different time periods and by different decision-makers; and (4) whether the plaintiffs alleged similar, if not identical, unlawful treatment. Id. at 1232 (citing Stone v. First Union Corp., 203 F.R.D. 532, 542 (S.D. Fla. 2001)).[4] Application of the factors articulated in Reed to the facts here militates against class certification.

As set forth above, Plaintiffs and prospective plaintiffs do not have similar job titles and positions, because there are over 51 job classifications for hourly employees throughout 14 separate departments. Second, although the hospital is located at a single geographic site, there are significant differences in practices between the various departments at the hospital. Third, Plaintiffs do not present any evidence demonstrating that all hourly employees were subject to the same practices of the same decision makers. This failure is telling, because each department at Bullock County Hospital has its own supervisory employees whose managerial styles vary. Finally, while Plaintiffs do make similar off-the-clock arguments, they do not and cannot assert that all employees suffered similar treatment because that requires individualized assessments inappropriate for a

---

[4] The four factors identified by the Court in Reed were synthesized from Eleventh Circuit law and articulated by the Court in Stone v. First Union Corp., 203 F.R.D. 532, 542-43 (S.D. Fla. 2001) in the context of an ADEA collective action.

collective action.   Thus, under the <u>Reed</u> standard, Plaintiffs fail to prove that potential members of the proposed class are similarly situated.

**B.    Certification and Notice Should Be Denied Because an Inherent Conflict of Interest Exists Between Michael Brown and Non-Supervisory Employees**

Plaintiffs' motion should be denied because the lead Plaintiff, Michael Brown, will not be able to adequately represent the proposed class.  "The FLSA allows one or more employees to pursue an action *in a representative capacity* for 'other employees similarly situated.'"  <u>Morisky v. Public Serv. Elec. & Gas Co.</u>, 111 F. Supp. 2d 493, 496 (D.N.J. 2000) (citing 29 U.S.C. § 216(b)) (emphasis added).   Although FLSA collective actions are different from Rule 23 class actions, courts are nevertheless charged with ensuring that the named plaintiff in a collective action adequately represents the interests of the other class members.  As one court has noted, "the adequacy of a class counsel or class representative is not necessarily irrelevant in a putative FLSA § 16(b) collective action because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented."  <u>Brown v. Money Tree Mortgage, Inc.</u>, 222 F.R.D. 676, 682 (D. Kan. 2004); <u>see</u> <u>also</u> <u>White v. Osmose, Inc.</u>, 204 F. Supp. 2d 1309, 1315 (M.D. Ala. 2002), <u>citing</u> <u>Hoffmann v. Sbarro, Inc.</u>, 982 F. Supp. 249, 263 (S.D.N.Y. 1997) ("FLSA collective actions are representative actions and . . . the [c]ourt has an equitable interest in ensuring that they are adequately represented.").

Here, Brown will not be able to adequately represent the opt-in class members because, as a supervisory employee who had time-keeping responsibilities, Brown has an inherent conflict of interest with potential opt-in class members.  Courts have frequently held that "[s]upervisory employees are often inappropriate representatives of nonsupervisory employees because the structure of the workplace tends to cultivate distinctly different interests between the two groups."  Wagner v. Taylor, 836 F.2d 578, 595 (D.C. Cir. 1987) (footnote omitted) (Title VII case); see also Donaldson v. Microsoft Corp., 205 F.R.D. 558, 568 (W.D. Wash. 2001) ("A conflict of interest may arise where a class contains both supervisory and non-supervisory employees.") (Title VII case).

The allegations of the present action bear out this warning.  In carrying out his responsibilities as a Nurse Manager, Brown had the authority to require employees to work before or after their shift or during lunch, and he reviewed and processed the time cards of his department.  Brown alleges that the policies and procedures of MES allowed working time to go unpaid in violation of the FLSA.  The evidence submitted clearly demonstrates, however, that Brown played an integral role in determining when employees worked and in making determinations regarding whether to approve or disapprove of unscheduled time.  As is demonstrated by the notations Brown made to certain time cards, this authority was not merely speculative or illusory.  (See Exh. A, Harbaugh Decl. ¶ 14 and

Attachment 2).   Accordingly, Brown was complicit in the very activity for which he is now suing.   Therefore, Brown is not an appropriate representative to prosecute an action on behalf of all hourly employees, including both supervisory and non-supervisory employees.   See King v. Enterprise Rent-A-Car Co., 231 F.R.D. 255, 264 (E.D. Mich. 2004) ("[C]ourts have found that a conflict exists where certain members participated in the very behavior that is being challenged.") (42 U.S.C. § 1981 case); Donaldson, 205 F.R.D. at 568 ("[T]he Court is unable to envision a class which would include both those who implemented [the allegedly unlawful practice] and those who allegedly suffered under it.  This conflict appears insurmountable.") (Title VII case).

Moreover, a class including all employees is inappropriate because supervisory employees, such as Brown, potentially could be found personally liable to non-supervisory employees for alleged misconduct.  See White, 204 F. Supp. 2d at 1314-15, citing Herman v. RSR Sec. Servs., 172 F.3d 132 (2d Cir. 1999) (holding that individuals may be liable under the FLSA where, pursuant to the "economic reality" test, they may be deemed "employers" under 29 U.S.C. § 203(d)).  See also Aguirre v. Bustos, 89 F.R.D. 645, 647 (D.N.M. 1981) (finding that named plaintiff in FLSA action had conflict of interest that precluded him from representing other employees in part because "defendants might seek to prove that [plaintiff] himself was an employer subject to FLSA liability . . . .").  As such,

supervisory employees may be conflicted from fully and vigorously prosecuting the claims of the non-supervisory employees.

Finally, a class composed of all hourly employees, including both supervisory and non-supervisory employees, is inappropriate because supervisory employees, including Brown, likely will be called upon to act in a manner adverse to the other class members during the course of this litigation. Because supervisory employees had the authority to impact MES's time-keeping system, including approving and disapproving unscheduled time and maintaining time records, and because supervisors oversaw the day-to-day work of non-supervisory employees and made scheduling decisions, supervisory employees likely will be vital fact witnesses for MES against other class members. Supervisory employees, including Brown, likely will be deposed and/or called at trial to explain the time-keeping system as a whole, or to rebut the individual allegations regarding unapproved time made by non-supervisory plaintiffs, such as refuting allegations that a non-supervisory employee worked through a lunch break. In other words, "it is foreseeable that supervisory class members . . . could legitimately be called to refute allegations of other members and testify that certain actions [were lawful]. Inasmuch as such testimony is against the interest of the entire class, it can hardly be viewed as *de minimis*." King, 231 F.R.D. at 265. This conflict makes it

inappropriate for supervisory employees to be part of the same class as non-supervisory employees.

MES anticipates that Plaintiffs will argue that this conflict can be resolved by dividing the employees into subclasses. However, pursuant to Alabama Rule of Professional Conduct 1.7, "[a] lawyer shall not represent a client *if the representation of that client will be directly adverse to another client . . . .*" (emphasis added). Dividing the claims into subclasses would result in Plaintiffs' counsel representing non-supervisory employees who may have claims against counsel's supervisory employee clients. Clearly this violates Rule 1.7(a). At the very least, Plaintiffs' counsel would be conflicted because his ability to represent the non-supervisory employees will be materially limited by his need to protect the supervisory employees from potential legal exposure. See Rule 1.7(b).

## IV. CONCLUSION

This case began with an individual supervisor, Michael Brown, claiming that he was fired based on racial discrimination and retaliation in violation of 42 U.S.C. § 1981, and also claiming that he was entitled to overtime pay under the FLSA because he had occasionally worked off-the-clock. The discrimination claims have been dismissed. Brown now argues that he should be allowed to pursue a collective action on behalf of each and every MES employee who has worked at Bullock County Hospital because on some unknown day or occasion—

possibly under his supervision—they might have worked for a few minutes before or after their shift, or during their lunch period, without being compensated for that time (although he doesn't know who or when or why). That is insufficient evidence of the putative opt-in plaintiffs being similarly situated. Consequently, plaintiffs' request for conditional class certification and notice must be denied.


/s/ M. Jefferson Starling, III
One of the Attorneys For Defendant,
Maximum Efficiency Squared, LLC


**OF COUNSEL**:

M. Jefferson Starling, III
Christopher T. Terrell
Daniel E. Harrell
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system and service will be perfected upon the following

this the 14th day of February, 2008:

David R. Arendall
Allen Durham Arnold
ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, AL 35203


/s/ M. Jefferson Starling, III
OF COUNSEL

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:07-CV-889-MEF |
| MAXIMUM EFFICIENCY SQUARED, | ) | |
| LLC, d/b/a Bullock County Hospital, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF CHARLES HARBAUGH

1.    My name is Charles Harbaugh.  I am over the age of majority and I have personal knowledge of the matters in this declaration.

2.    I am employed by Maximum Efficiency Squared, LLC ("MES") as the Human Resources Director.  I have held this position since April 2007.

3.    From December 2004 to the present, MES has employed approximately 249 persons at Bullock County Hospital ("BCH").  MES did not employ anyone at BCH prior to December 2004.

4.    MES has always paid overtime to hourly employees at BCH based on a 40-hour work week.

5.    MES pays employees overtime based on a 40-hour work week.  Since December 2004, Employees at BCH receive a copy of the Bullock County Hospital Employee Handbook, a handbook developed and used by the predecessor employer to MES.  MES does not fully incorporate all policies and procedures set forth in the Employee Handbook.  Most notably,

although the Employee Handbook states that employees are paid overtime based on an 80-hour bi-weekly period, MES never has followed this particular policy.

6.    The workforce at Bullock County Hospital can be divided into two groups: salaried employees and hourly employees.    Since December 2004, there have been approximately 230 hourly employees.  All hourly employees are responsible for ensuring that their time entries are correct and reflect the scheduled hours that they have worked.  For hourly employees, there are at least 51 different job classifications.  Each job classification has job-specific duties and responsibilities.  Moreover, although several similar job classifications exist in numerous departments of the hospital, each department has its own supervisors and the practices within each department may vary depending on the particular management styles of each supervisor or the specific nature of the work performed in that particular department.  For example, employees in the Emergency Room division of the hospital likely are subject to different practices based on the necessity for immediate patient care than employees in similar positions in the Radiology Department.  Accordingly, a particular job classification (i.e., Unit Clerk or Patient Care Technician) in one department may be subject to different policies, procedures and practices than that same job classification in another department.    Basic departments and their specific hourly employee job classifications follow:

NURSING

1.    Patient Care Technician (PCT)

2.    PCT- Unit Clerk

3.    Scrub Technician

4.    Licensed Practical Nurse

5.    PRN – Licensed Practical Nurse

6.    Registered Nurse

7.    Charge Nurse or Nurse Manager

8.    PRN – Registered Nurse

9.    Director of Nursing

10.   Nurse Practitioner

11.   CRNA

12.   Physicians Assistant

HOME HEALTH

13.   Registered Nurse

14.   PRN – Registered Nurse

15.   PRN – Licensed Practical Nurse

16.   Patient Care Technician

LAB

17.   Lab Assistant

18.   Medical Lab Technician

19.   Medical Tech

ENVIRONMENTAL SERVICES

20.   Groundskeeper

21.   Environmental Service Technician

22.   Maintenance Mechanic

23.   Environmental Services Supervisor

PURCHASING

24.   P&D Technician

RADIOLOGY

25.   X-Ray Technician

26.   Radiology Technician – ARRT (M)

27.    Radiology Technician – ARRT

28.    Ultra Sound Technician

29.    Nuclear Medicine Technician

DIETARY

30.    Dietary Aide

31.    Dietary Cook

MEDICAL RECORDS

32.    Medical Records Associate

33.    Coder, RHIT, RHIA

34.    Transcriptionist

BUSINESS OFFICE

35.    Registration Associate

36.    Business Office Associate

REHABILITATION SERVICE

37.    Physical Therapist

38.    Occupational Therapist

39.    Sports Therapist

40.    Licensed Physical Therapy Assistant

MENTAL HEALTH

41.    Social Worker, MSW

42.    Program Director

43.    Mental Health Counselor

44.    Activities Coordinator

CLINICS

45.    Clinic Office Associate

46.    Medical Assistant

47.    Clinic Office Supervisor

ADMINISTRATION

48.    Executive Assistant

49.    Administrative Assistant

PHARMACY

50.    Pharmacy Associate

51.    Pharmacist


7.    Except for employees in the Home Health Department, hourly employees at Bullock County Hospital use a time clock. There is one time clock used at Bullock County Hospital, which is centrally located on the main level of the hospital. The time clock was installed prior to MES's tenure at Bullock County Hospital. The time clock records punches in one minute increments. For purposes of calculating hours worked during a day, the time clock's computer program "rounds" time punches to the nearest 15 minute interval. For example, if an employee clocks in at 8:06, the time clock recognizes the employee's start time as 8:00 for purposes of calculating hours worked. However, if that same employee clocks in at 8:08, the clock recognizes 8:15 as the start time. The same rounding practices apply at the conclusion of the work day, so that an employee who clocks out at 7:54 would be paid as if working until 8:00, while an employee who clocks out at 8:03 would be paid for working until 8:00. This time clock also automatically deducts 30 minutes for lunch during an eight-hour shift and one hour for a twelve-hour shift. Employees who leave the hospital facility for lunch are required to clock out

when they leave and clock back in upon return. If an employee clocks out for lunch, 30 minutes is not automatically deducted.

8.      Employees are instructed to manually correct their time cards if the cards incorrectly reflect their time worked. For instance, if an employee is unable to take their full 30 minutes for lunch, they are supposed to make a notation on their time card to reflect this discrepancy. If an employee makes such a notation, the 30 minutes automatically deducted for lunch typically is added back, barring any unusual circumstances. Department supervisors are required to approve these notations. It is the responsibility of the employee, however, to ensure the accuracy of his or her own time card before it is submitted to the appropriate supervisor.

9.      MES has procedures for ensuring that time records are accurate. For example, employees may forget to clock in or clock out or they may choose, or be unable, to take lunch on some days. In such situations, employees have the opportunity and responsibility to make notations to their time card to adjust for time worked but not reflected properly. Next, the department supervisor completes a time sheet which is sent to payroll, approving or disapproving of the time card notations, as well as unscheduled time. Finally, payroll reviews the time sheets to determine accuracy. Corrections can occur at any point in this process.

10.      Employees are aware of this policy of making notations to time cards to accurately reflect their time worked—MES has communicated it to them formally through the Employee Handbook and informally through supervisors many times.

11.      After a review of some of the time cards and time sheets of Michael Brown, Carold Battle, and Judy Davis, as well as opt-in candidates Christopher France and Marcia Banks, I noticed that, during the period pertinent to this litigation, each of these employees made notations to their time cards to change the time worked. See Attachment 1.

12.     It would be highly unusual for any of the departments or divisions to have pre-shift or post-shift meetings either prior to or after an employee clocks in or out.  Shifts typically overlap by thirty minutes to avoid the need for pre-shift and post-shift meetings.

13.     Michael Brown was employed at Bullock County Hospital from May 19, 2004 to May 14, 2007.  Brown was initially employed as a Nurse in the ER.  On March 27, 2006, Brown was elevated to Nurse Manager (also commonly referred to as "charge nurse") in the ER.  Nurse Manager is a supervisory position, and Nurse Managers typically have administrative duties, including scheduling, approving overtime and time off for hourly employees, and suggesting discipline or termination when necessary.  Moreover, Nurse Managers oversee the nurses and technicians in their particular departments.  Specifically, Nurse Managers directly supervise Patient Care Technicians, Licensed Practical Nurses (LPNs), and Registered Nurses.  On June 2, 2006, Brown transferred to the Gateway/New Hope divisions of the Mental Health Department to act as a Nurse Manager.  Gateway is the hospital's psychiatric ward, and New Hope is a drug rehabilitation program.

14.     As a Nurse Manager, Brown was directly involved in the time-keeping and payroll process.  Brown reviewed his subordinates' time cards and had the authority to approve or disapprove of unscheduled time.  Brown also transferred the information on time cards to time sheets, thereby approving or disapproving notations.  A cursory assessment of time cards reviewed by Brown demonstrates that, while Brown typically approved the unscheduled time of his subordinates, he also, on at least one occasion, deducted an entire shift as being unapproved time.  See Attachment 2.

15.     Other responsibilities of Nurse Managers include, among other things, formulating a plan of care for each of the patients, documenting every identified patient problem,

promptly notifying the physician about situations that require immediate intervention, performing the role of leader in a variety of education and therapy groups, performing direct nursing care through utilization of the nursing process and in accordance with established policies and procedures, collaborating with health team members to ensure safe practice by following pre-established policies in the delivery of care, participating in departmental Continuous Quality Improvement and Assurance activities, representing the Special Services Unit on hospital committee as assigned by the Director of Nursing, completing required documentation duties in a timely, accurate, and concise manner, and other responsibilities as needed and assigned by the Director of Nursing.

16.    MES records indicate that Carold Battle was employed as a Patient Care Technician in the ER, a non-supervisory position. Responsibilities for Patient Care Technicians include, among other things, taking and recording vital signs, patient hygiene needs and personal care, linen changes and resupply, run errands to other areas and departments related to patient care, assist patients with nourishments, tasks appropriate for each individual patient's condition, assist with patient procedures as directed, position patients for procedures, communicate observed changes in patient's condition, clean up, prep work, and function in a clerical role as needed, as well as performing other necessary work.

17.    MES records indicate that Judy Davis also was employed as a Patient Care Technician in the ER, a non-supervisory position. During her employment, Davis was also a Patient Care-Technician-Unit Clerk, another non-supervisory position. This position involves duties that are more clerical in nature than other Patient Care Technicians.

18.    MES records indicate that Christopher France is employed as a Patient Care Technician in the Mental Health Department, a non-supervisory position. The responsibilities

for a Patient Care Technician in the Mental Health Department are similar to the responsibilities of a Patient Care Technician in the ER.

19.    MES records indicate that Marcia Banks is employed as a Unit Clerk, a non-supervisory position. Unit Clerks primarily perform clerical work and are dispersed throughout numerous divisions in the hospital.


I declare under penalty of perjury laws of the United States that the foregoing is true and correct to the best of recollection and knowledge.

This 14th day of February, 2008.

Charles Harbuagh

# ATTACHMENT 1

EHPN: 01028 F BADGEN: 01028
BROWN MICHAEL

027 PSYCHIATRIC UNIT (NEW)
PAY PERIOD=03/11/07 THRU 03/24/07

DATE 1

| DATE | DAY | IN | OUT | WORKED | HOURS | OVERTIME |
|------|-----|------|------|--------|-------|----------|
| 11SU3 | | 2:25 | 10:55 | 8.00 | 8.00 | |
| 12MO3 | | 8:50 | 6:00 | 9.75 | 16.75 | |
| 13TU3 | | 7:20 | 3:08 | 7.50 | 24.25 | 3.00 |
| 14WE3 | | 7:32 | 6:39 | 10.75 | 35.00 | |
| 15TH3 | | 7:34 | 3:04 | 7.00 | 40.00 | 2.00 |
| 16FR3 | | 7:12 | 8:05 | 12.25 | 40.00 | 14.25 |
| | | | | | | 3.00 |
| 19MO3 | | 8:15 | 6:28 | 9.75 | 49.75 | 11.25 |
| 20TU3 | | 8:04 | 6:08 | 9.75 | 59.50 | |
| 21WE3 | | 7:09 | 7:55 | 11.75 | 71.25 | |

1 = 63.25
2 = 8
14 = 11.25

#A1161  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL ~ (205) 871-7396

www.gregan.com

| | NAME | | PERIOD ENDING | |
|---|------|---|---------------|---|

| | I.D. # | | DEPT. | FILE | CARD |
|---|--------|---|-------|------|------|

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-------|-----|------|-----|------|--------------|-------------------|----------|

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMPE: 01028 F BADGE#: 01028
BROWN MICHAEL

027 PSYCHIATRIC UNIT (NEW)
PAY PERIOD=01/14/07 THRU 01/27/07

DATE 1

ARD #

| DATE | | IN | | OUT | | WORKED | ACCUMULATED HOURS | OVERTIME |
|------|--|----|--|-----|--|--------|------------------|----------|
| 15MO1 | | 7:34 | | 4:54 | | 9.00 | 9.00 | |
| 16TU1 | | 7:25 | | 4:00 | | 8.00 | 17.00 | |
| 17WE1 | | 7:25 | | 5:06 | | 9.00 | 26.00 | |
| 18TH1 | | 7:13 | | 2:35 | | 6.75 | 32.75 | |
| 19FR1 | | 7:11 | | 7:01 | | 11.25 | 40.00 | 4.00 |
| 20SA1 | | 10:45 | | 12:59 | | 2.25 | 40.00 | 6.25 |
| | | | | | | | | |
| 22MO1 | | 8:27 | | 4:09 | | 7.25 | 47.25 | |
| 23TU1 | | 7:32 | | 2:33 | | 6.50 | 53.75 | |
| 24WE1 | | 7:24 | | 5:33 | | 9.50 | 63.25 | |
| | | | | | | | | |
| 26FR1 | | 7:41 | | 3:51 | | 7.50 | 70.75 | |

25 Thur    Seminar    8.00 h r s

2hrs    pto

8 = 8hrs
1 = 70.75
1 = 6.25

#A11S1  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL -- (205) 871-7395

www.gregan.com

| | | NAME | | PERIOD ENDING | | |
|--|--|------|--|---------------|--|--|
| I.D. # | | DEPT. | | FILE | CARD | |

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-------|----|------|-----|------|--------------|-------------------|----------|
| | | | | | | | | | |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMP#: 01028 F  BADGE#: 01028
BROWN MICHAEL

027 PSYCHIATRIC UNIT (NEW)
PAY PERIOD=11/19/06 THRU 12/02/06

| DATE | IN | OUT | | LATED OVERTIME |
|------|------|-------|-------|-------|
| 20MO3 | 7:52 | 5:00 | 8.50 | 8.50 |
| 21TU3 | 7:15 | 3:01 | 7.25 | 15.75 |
| 22WE3 | 8:47 | 12:52 | 4.25 | 20.00 |
| 27MO3 | 7:18 | 4:44 | 9.00 | 29.00 |
| 29WE3 | 7:16 | 4:55 | 9.25 | 38.25 |
| 30TH3 | 7:12 | 5:10 | 9.50 | 47.75 |
| 1FR3 | 7:31 | 6:31 | 10.50 | 58.25 |

*PTO* *81.75*

*80* *W*

*MV*

#A1181  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL – (205) 871-7399

www.gregan.com

---

| | NAME | | | PERIOD ENDING | |
|---|---|---|---|---|---|
| | I. D. # | DEPT. | FILE | CARD | |
| DATE | IN | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMP#: 01028 F  BADGE#: 01028
BROWN MICHAEL

027 PSYCHIATRIC UNIT (NEW)
PAY PERIOD=11/05/06 THRU 11/18/06

| DATE | IN | OUT | | | ATED ERTIME |
|------|------|-------|------|-------|------|
| 6MO3 | 10:00 | 4:08 | 5.75 | 5.75 | |
| 8WE3 | 7:51 | 5:03 | 8.75 | 14.50 | |
| 9TH3 | 7:15 | 7:00 | 11.25 | 25.75 | |
| 10FR3 | 7:43 | 4:23 | 8.25 | 34.00 | |
| 13MO3 | 7:07 | 5:11 | 9.50 | 43.50 | |
| 14TU3 | 7:06 | 5:02 | 9.50 | 53.00 | |
| 15WE3 | 7:07 | 2:44 | 7.00 | 60.00 | |
| 16TH3 | 7:49 | 5:14 | 9.00 | 69.00 | |
| 17FR3 | 7:35 | 5:02 | 9.00 | 74.00 | 4.00 |
| 18SA3 | 7:34 | 12:37 | 5.00 | 74.00 | 9.00 |

#A1181  SOBRIE-REGAN AND ASSOCIATES, Birmingham, AL – (205) 871-7996

www.sregan.com

| DATE | DAY | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-----|------|-----|------|--------------|-------------------|----------|

SUMMARY OF CODES:
| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMP#: 01028 F  BADGE#: 01028
BROWN MICHAEL

027 PSYCHIATRIC UNIT (NEW)
PAY PERIOD=08/13/06 THRU 08/26/06

| DATE | IN | OUT | HOURS | |
|---|---|---|---|---|
| 13SU3 | 7:14 | 3:26 | 7.75 | 7.75 |
| | | | Bch | |
| 15TU3 | 6:59 | 5:42 | 10.25 | 18.00 |
| 16WE3 | 7:15 | 6:16 | 10.50 | 28.50 |
| 17TH3 | 7:00 | 5:22 | 10.00 | 38.50 |
| 18FR3 | 7:26 | 5:58 | 10.00 | 40.00 |
| 21MO3 | 9:55 | 4:34 | 6.00 | 46.00 |
| 23WE3 | 7:00 | 5:31 | 10.00 | 56.00 |
| 24TH3 | 7:03 | 5:23 | 10.00 | 66.00 |
| 25FR3 | 8:58 | 6:50 | 9.00 | 75.00 |

$1 = 75.0
y₁ = 8.5
83.5
P.O. #A1181   GORRIE-REGAN AND ASSOCIATES, Birmingham, AL — (205) 871-7395
www.gregan.com

SUMMARY OF CODES:
CODE    DESCRIPTION
*       PAID BREAK
N       NON-WORKING DAY
H       HOLIDAY
A       REVISION AND/OR LOCK OUT AUTHORIZATION
L       LOCK OUT AUTHORIZATION
→       CORRECTION

| | | IN | | OUT | | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|---|---|---|---|---|---|---|---|---|

EMP#: 01028 F  BADGE#: 01028
BROWN MICHAEL

027 PSYCHIATRIC UNIT (NEW)
PAY PERIOD=07/16/06 THRU 07/29/06

| DATE | | IN | | OUT | | | T.E.D. RTIME |
|---|---|---|---|---|---|---|---|
| 18TU3 | 6:51 | 5:04 | 9.75 | 9.75 | | |
| 19WE3 | 6:56 | 5:26 | 10.00 | 19.75 | | |
| 20TH3 | 6:56 | 5:38 | 10.25 | 30.00 | Psych | |
| 21FR3 | 6:51 | 11:05 | 15.25 | 40.00 | | 5.25 |
| 22SA3 | 7:01 | 3:58 | 8.50 | 40.00 | | 13.75 |
| | | | | | Psych Pun | |
| 24MO3 | 7:08 | 5:03 | 9.25 | 49.25 | | |
| 25TU3 | 7:09 | 6:01 | 10.25 | 59.25 | ER | |
| 27TH3 | 6:54 | 5:15 | 9.75 | 69.25 | | |
| 28FR3 | 7:40 | 5:09 | 9.00 | 78.25 | | |

Psy-
$S_1 = 66.0$     ER; 10.25
$S_2 = 2.0$
$Y_1 = 8.5$
$Y_2 = 5.25$

81.75 - 027
- 10.25 - 023
72.00

Psych
DU
33.00

#A112:  GORNER-COX AND ASSOCIATES, Birmingham, AL -- (205) 821-7209 1

043

www.gnegcs.com

---

N A M E         PERIOD ENDING

| | | I.D. # | | | DEPT. | | FILE | | CARD | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | PAY | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME | | |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|---|---|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMPH: 01028 F BADGEN: 01028
BROWN MICHAEL

023 EMERGENCY ROOM (NEW)
PAY PERIOD=02/26/06 THRU 03/11/06

| DATE | IN | OUT | WORKED | HOURS | OVERTIME |
|------|------|------|--------|-------|----------|
| 4SA3 | 7:07 | 7:30 | 11.75 | 11.75 | |
| 5SU3 | 6:59 | 7:28 | 12.00 | 23.75 | |
| 6MO3 | 7:02 | 7:17 | 11.75 | 35.50 | |
| 7TU3 | 7:10 | 7:35 | 11.75 | 47.25 | |
| 10??3 | ?00 | 7?·15 | 11.75 | | |
| 1GFR3 | 7:09 | 7:12 | 0.00 | 47.25 | |

59.00

OT =

1 - 35.00
2 - 16.75
Y2 - 7.25
PTO - 21.00
80.00

POO = 2W HRS

FA1181   GORRIE-REGAN AND ASSOCIATES, Birmingham, AL - (205) 871-7392

www.gregan.com

| | | NAME | | PERIOD ENDING | |
|---|---|---|---|---|---|
| | I. D. # | | DEPT. | FILE | CARD |
| DATE | DAY | IN | CODE | OUT | CODE |

SUMMARY OF CODES:
| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| ---> | CORRECTION |



EMP#: 01028 F BADGE#: 01028
BROWN MICHAEL

023 EMERGENCY ROOM (NEW)
PAY PERIOD=08/14/05 THRU 08/27/05

| DATE | | | | | | |
|------|------|------|------|------|
| 14AUG | 3:03 | 7:26 | 6.00 | 6.00 |
| 15AUG | 6:56 | 7:30 | 12.00 | 18.00 |
| 16TUG | 8:07 | 7:16 | 10.50 | 16.50 |
| 19FRI | 7:02 | 7:17 | 11.50 | 28.00 |
| 20SAT | 7:12 | 7:19 | 12.00 | 40.00 |
| 24WED | 7:04 | 7:17 | 11.50 | 51.50 |
| 25THU | 7:06 | 7:09 | 11.50 | 63.00 |
| 26FRI | 6:48 | 7:22 | 12.25 | 75.25 |

1=$60.50

2=20.5

77.05

14= 8.50

2= 4.00

Total=19.25

| 15AUG | 6:56 | 75.0 | | 12.00 |

#A1181  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL — (205) 871-7395

163

www.gregan.com

|  | | | | N A M E | | PERIOD ENDING | |
|--|--|--|--|------|--|---------------|--|
| | I. D. # | | DEPT. | | FILE | CARD | |
| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |

SUMMARY OF CODES:
| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |



EMP#: 00074 F  BADGE#: 00074
BATTLE CAROLD F

023 EMERGENCY ROOM (NEW)
PAY PERIOD=05/05/07 THRU 05/19/07

| | | | | WORKED | HOURS | OVERTIME |
|---|---|---|---|---|---|---|
| 8TUE | 2138 | 1800 | | 8.75 | 8.75 | |
| 9WED | 2140 | 1105 | | 10.00 | 18.75 | |
| 10SAT | 6136 | 11111 | | 15.25 | 17.50 | |
| 13SUN | 6705 | 7006 | | 16.00 | 34.50 | |
| 15TUE | 6116 | 2123 | | 10.25 | 46.75 | |
| 6WED | 713 | 1:00 | 9.00 | 10.00 | 36.00 | |
| 17THU | 2101 | 711 | | 10.00 | 72.00 | |

1 = 16
2 = 63.75

#A1101  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL -- (205) 871-7395

078

www.gregan.com

| | | PAGE | | PER 00 ENDING | |
|---|---|---|---|---|---|
| | I.D. # | DEPT. | PILE | CARD | |
| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|---|---|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |



EMP#: 00074 F  BADGE#: 00074
BATTLE CAROLD F

023 EMERGENCY ROOM (NEW)
PAY PERIOD=04/22/07 THRU 05/05/07

| DATE | DAY | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-----|------|------|------|------|------|------|
| SATU3 | | 2:40 | | 12:19 | | 9.00 | 9.00 | |
| 28APR3 | | 1:22 | | 12:00 | | 8.75 | | |
| SUNR3 | | 5:07 | | 12:00 | | 6.25 | 27.25 | |
| 29SU3 | | 6:35 | | 11:29 | | 16.00 | 43.25 | |
| TUE3 | | 2:42 | | 12:02 | | 4.75 | 50.00 | |
| WE3 | | 2:55 | | 2:47 | | 4.00 | 54.00 | |
| THU3 | | 2:43 | | 11:9 | | 8.00 | 63.28 | 1.75 |

1=15.75

2=59    74.00

24=1    + 1.75 OT

Total 75.75 HR

PAT181 GORRE-REGAN AND ASSOCIATES, Birmingham, AL – (205) 251-7988

157

www.crepaid.com

| | NAME | | PERIOD ENDING | | 2 |
|---|---|---|---|---|---|
| | I. D. # | | DEPT. | FILE | CARD |

| DATE | DAY | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-----|------|------|------|------|------|------|
| | | | | | | | | |

SUMMARY OF CODES:
| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMP#: 00074 F  BADGE#: 00074
BATTLE CAROLD F

023 EMERGENCY ROOM (NEW)
PAY PERIOD=03/25/07 THRU 04/07/07

| DATE | DAY | IN | OUT | HOURS | OVERTIME |
|------|-----|-----|------|-------|----------|
| 2PTU3 | | 2:40 | 11:00 | 8.00 | 8.00 |
| 28WE3 | | 2:40 | 0:13 | 8.00 | 16.00 |
| | | | | | |
| 3TU3 | | 2:39 | 2:00 | 8.75 | 24.75 |
| 4WE3 | | 3:05 | 12.00 | | |
| 5TH3 | | 2:40 | 2:00 | 8.75 | 33.50 |

PDO 32
8 = 41.25

ZP1181  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL -- (205) 871-7388

ID. #    DEPT.    FILE    CARD

PERIOD ENDING

| DATE | DAY | IN | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-----|------|------|--------------|-------------------|----------|

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMPH: 00074 F   BADGE#: 00074

BATTLE CAROLD F

*Carold Batle*

023 EMERGENCY ROOM (NEW)

PAY PERIOD=01/28/07 THRU 02/10/07

| DATE | DAY | IN | OUT | WORKED | HOURS | OVERTIME |
|------|-----|------|-------|-------|-------|----------|
| 30 | TU3 | 2:41 | 11:16 | 8.00 | 8.00 | |
| 31 | WE3 | 4:07 | 12.00 | 9.50 | | |
| 4 | SU3 | 7:44 | 11:14 | 14.50 | 22.50 | |
| 6 | TU3 | 2:40 | 11:16 | 8.00 | 30.50 | |
| 7 | WE3 | 3:54 | 12:06 | 7.50 | 38.00 | |
| 8 | TH3 | 2:40 | 11:14 | 8.00 | 46.00 | |

PDO 16 HR

1 = 7.50

2 = 46

V = 16

#A1181   GORRIE-REGAN AND ASSOCIATES, Birmingham, AL -- (205) 871-7398

152

www.gregan.com

---

| | NAME | | PERIOD ENDING |
|---|---|---|---|
| | I.D. # | DEPT. | FILE | CARD |

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-------|-----|------|-----|------|--------------|-------------------|----------|
| | | | | | | | | | |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMPN: 00074 F BADGER: 00074

BATTLE CAROLD F

*Carold Battle*    ATE

023 EMERGENCY ROOM (NEW)

PAY PERIOD=12/31/06 THRU 01/13/07    RD #

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-------|----|----|----|----|------|------|------|
| 2TU3 | | | 2:41 | | 11:14 | | 8.00 | 8.00 | |
| 3WE3 | | | 2:41 | | 11:19 | | 8.00 | 16.00 | |
| 4TH3 | | | 2:42 | | 2:51 | | 0.00 | 16.00 | |
| 6SA3 | | | 6:43 | | 11:11 | | 15.50 | 31.50 | |
| 7SU3 | | | 6:40 | | 7:11 | | 12.00 | 43.50 | |
| 9TU3 | | | 3:41 | | 12:05 | | 7.75 | 51.25 | |
| 10WE3 | | | 3:31 | | 2315 | | | | |
| 11TH3 | | | 2:44 | | 12:00 | | 8.75 | 60.00 | |

PTO 8 HR

#41124 OORRIE-REGAN AND ASSOCIATES, Birmingham, AL -- (205) 871-7356

www.graxon.com

---

| | NAME | | PERIOD ENDING | | 2 |

| | I. D. # | | DEPT. | | FILE | | CARD |

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-------|----|----|----|----|------|------|------|
| 1/10 | | | | | 2315 | | *forgot to clock out —PD* | | |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

1057

EMP#: 02074 F  BADGE#: 02074

BATTLE CAROLD F

*Carold Battle*

023 EMERGENCY ROOM (NEW)

PAY PERIOD=11/19/06 THRU 12/02/06

| DATE | DAY | | | | | ATED | ERTIME |
|------|-----|--|--|--|--|------|--------|
| 21 | TU3 | 3:32 | 5:31 | 2.00 | 2.00 | | |
| 21 | TU3 | 5:52 | 1:30 | 9.50 | 9.50 | | |
| 22 | WE3 | (15:15) | 11:15 | 0.00 | 9.50 | | |
| 25 | SA3 | 6:40 | 7:20 | 0.50 | 10.00 | | |
| 26 | SU3 | 7:00 | 11:10 | 15.25 | 25.25 | | |
| 28 | TU3 | 2:46 | 11:23 | 8.25 | 33.50 | | |
| 29 | WE3 | 2:38 | 11:09 | 8.00 | 41.50 | | |
| 30 | TH3 | 3:31 | 11:23 | 7.50 | 49.00 | | |

PDO 16 HR
PDO 16 HR
P=23
1=8
2=49

80

#A1181  CORRIE-REGAN AND ASSOCIATES, Birmingham, AL - (205) B71-7395

043

www.gregan.com

| | | NAME | | | PERIOD ENDING | 2 |
|--|--|------|--|--|---------------|---|

| | | | I.D. # | | DEPT. | | FILE | | CARD | |

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-------|-----|------|-----|------|--------------|-------------------|----------|
| 11/22 | | | 15:00 | → | 11:15 | | | | |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMP#: 00074 F  BADGE#: 00074
BATTLE CAROLD F

023 EMERGENCY ROOM (NEW)
PAY PERIOD=09/24/06 THRU 10/07/06

| DATE | IN | OUT | | |
|------|------|-------|-------|-------|
| 26TU3 | 2:40 | 11:27 | 8.25 | 8.25 |
| 27WE3 | 2:48 | 11:23 | 8.25 | 16.50 |
| 30SA3 | 6:40 | 11:13 | 15.50 | 32.00 |
| 1SU3 | 6:39 | 11:37 | 16.00 | 48.00 |
| 3TU3 | 2:40 | 11:15 pm pp | | |
| 4WE3 | 3:35 | 11:11 | 7.25 | 55.25 |
| 5TH3 | 2:48 | 11:24 | 8.25 | 63.50 |

1 = 71.56
V = 8.50

PDO 16. HR

PERIOD ENDING

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-------|-----|------|-----|------|--------------|-------------------|----------|
| | | | | | | | | | |

SUMMARY OF CODES:
| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |



EMP#: 00074 F  BADGE#: 00074
BATTLE CAROLD F
023 EMERGENCY ROOM (NEW)
PAY PERIOD-08/13/06 THRU 08/26/06

| DATE | IN | OUT | | |
|------|------|-------|-------|-------|
| 15TU3 | 3:53 | 11:21 | 6.75 | 6.75 |
| | | | 11.75 | 18.5 |
| 19SA3 | 6:43 | 7:00 | 11.75 | 22.00 |
| 20SU3 | 7:21 | 11:22 | 15.25 | 33.75 |
| 22TU3 | 3:30 | 11:37 | 7.75 | 29.75 |
| 23WE3 | 8:27 | 11:31 | 3.00 | 32.75 |
| 24TH3 | 3:25 | 11:12 | 7.25 | 40.00 |
| | | | | 51.75 |

$2=39.75
$3= 12.0
5.75
PTO 20 HR

**NAME**     **PERIOD ENDING**     2

| I.D. # | DEPT. | FILE | CARD |
|--------|-------|------|------|

| DATE | DAY SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----------|-----|------|-----|------|--------------|-------------------|----------|
| 8/19 | | | | 7 PM | | left picks forgot to clock out | | |

FA1181  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL – (205) 871-7395

www.gregan.com

-095-

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| ＊ | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMP#: 00074 F  BADGE#: 00074

BATTLE CAROLD F

*Carold Battle* (signature)

023 EMERGENCY ROOM (NEW)

PAY PERIOD=07/16/06 THRU 07/29/06

| DATE | IN | OUT | HOURS WORKED | ACCUMULATED OVERTIME |
|------|------|-------|------|------|
| 18TU3 | 3:21 | 11:13 | 7.50 | 7.50 |
| 19WE3 | 3:28 | 8:17 | 4.75 | 12.25 |
| 19WE3 | 8:42 | 11:09 | 7.25 | 14.75 |
| 22SA3 | 7:37 | 11:41 | 15.00 | 29.75 |
| 23SU3 | 7:50 | 11:25 | 14.75 | 44.50 |
| 25TU3 | 3:23 | 11:20 | 7.25 | 51.75 |
| 26WE3 | 3:29 | 11:17 | 7.25 | 59.00 |
| 27TH3 | 3:49 | 11:15 | | |

$S_1 = 14.5$

$S_2 = 51.5$

16 HE PDO

80.0

BA1161   CORRIE-REGAN AND ASSOCIATES. Birmingham, AL — (205) 471-7896

026

www.cregan.com

| DATE | DAYS | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|------|-------|-----|------|-----|------|------|------|------|
| | | | | | | | | | |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMP#: 00074 P BADGE#: 00074
BATTLE CAROLD F

E 1

023 EMERGENCY ROOM (NEW)
PAY PERIOD=02/12/06 THRU 02/25/06

| DATE | IN | OUT | WORKED | HOURS | OVERTIME |
|------|------|------|------|------|------|
| 14TU3 | 3:05 | 11:13 | 7.75 | 7.75 | |
| 15WE3 | 3:17 | 11:13 | 7.50 | 15.25 | |
| 18SA3 | 11:11 | 11:12 | 0.00 | 15.25 | see back |
| 21TU3 | 3:16 | 11:15 | 7.50 | 22.75 | |
| 22WE3 | 3:15 | 11:10 | 7.50 | 30.25 | |
| 23TH3 | 3:14 | 11:23 | 7.75 | 38.00 | |

1=7.5
2=45.5
PTD=16
Total 69.00

16 hrs PTO

#A1181  GORRE-REGAN AND ASSOCIATES, Birmingham, AL -- (205) 871-7395

-237-

www.gregan.com

| | | | | | | NAME | | | PERIOD ENDING | 2 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | I.D. # | | DEPT. | | | FILE | CARD | | |

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-------|-----|------|-----|------|-------------|---------|----------|
| 2/18/06 | | | 0710 | | 11:12 pm | | 15 hrs | R# | |

SUMMARY OF CODES:
CODE    DESCRIPTION
#       PAID BREAK
N       NON-WORKING DAY
H       HOLIDAY
A       REVISION AND/OR LOCK OUT AUTHORIZATION
L       LOCK OUT AUTHORIZATION
→       CORRECTION

EMP#: 00074 P BADGE#: 00074
BATTLE CAROLO F

023 EMERGENCY ROOM (NEW)
PAY PERIOD=01/15/06 THRU 01/28/06

| DATE | IN | OUT | | ULATED OVERTIME |
|------|------|-------|-------|------|
| 17TU3 | 2:54 | 11:09 | 7.75 | 7.75 |
| 18WE3 | 3:17 | 11:18 | 7.50 | 15.25 |
| 21SA3 | 7:23 | 11:13 | 14.75 | 30.00 |
| 22SU3 | 11:43 | 11:44 | 0.00 | 30.00 |
| 24TU3 | 3:15 | 11:16 | 7.50 | 37.50 |
| 25WE3 | 3:20 | 11:08 | 7.50 | 45.00 |
| 26TH3 | 3:16 | 11:20 | 7.50 | 52.50 |

1 = 14.75
2 = 53.75
68.50

PTO = 8.00

PD = 8HR = 76.50

# See Back

#A1181   GORRIE-REGAN AND ASSOCIATES, Birmingham, AL -- (205) 871-7395

www.gregan.com

NAME                    PERIOD ENDING  2

| DATE | DAY SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----------|----|----|-----|------|------|------|------|
| 1-22-06 | 06 | 4/5 | → | 2344 | | | | |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMP#: 00074 P  BADGE#: 00074

*Carold Battle*

BATTLE CAROLD E
023 EMERGENCY ROOM (NEW)
PAY PERIOD=10/23/05 THRU 11/05/05

1

| DATE | | | | | RED TIME |
|---|---|---|---|---|---|

1=14,50
2=53,85
Total=67,75
PTO = 9,25
Total = 80,0

PDO 20 HR

#A1181   GORRIE-REGAN AND ASSOCIATES, Birmingham, AL -- (205) 871-7395

204

www.gregan.com

| NAME | | PERIOD ENDING | | 2 |
|---|---|---|---|---|

| | I. D. # | | DEPT. | | FILE | CARD |
|---|---|---|---|---|---|---|

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|---|---|---|---|---|---|---|---|---|---|
| 10-29-05 | | | 0748 | | 2315 | | | 75, RN | |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|---|---|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |



EMP#:- 01157 F BADGE#: 01157
DAVIS JUDY B
002 MAILING SERVICE
PAY PERIOD=11/21/04 THRU 12/04/04

| DATE | IN | OUT | WORKED | HOURS | OVERTIME |
|------|------|------|------|------|------|
| 26FR3 | 8:06 | 4:35 | 8.00 | 8.00 | |
| 30TUE | 8.00 | 4.30 | | | |
| 2TH3 | 7:24 | 4:17 | 8.25 | 16.25 | |
| 3FR3 | 7:40 | 5:00 | 8.75 | 25.00 | |

I = 72 × 7.50 = 540.00
O = 24hr @ .50 = 12.00
M = 384
O = 64.25 @ .50
O = 8.25 @ .75

MWd 7:00 - 3:30
30 TUE 8.00 4.30

GORRIE-REGAN AND ASSOCIATES, Birmingham, AL — (205) 871-7399

www.gregan.com

-167

| DATE | DAY | SHIFT | NAME IN | CODE | PERIOD ENDING OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-------|---------|------|-------------------|------|--------------|-------------------|----------|
| | | I. D. # | DEPT. | | FILE | CARD | | | |
| M - | | | 7:00 | - | 3:30 | | | | |
| T - | | | 7:00 | - | 3:30 | | | | |
| W - | | | 7:00 | | 3:30 | | | | |
| F - | | | 7:00 | | 3:30 | | | | |

SUMMARY OF CODES:
CODE        DESCRIPTION
*           PAID BREAK
N           NON-WORKING DAY
H           HOLIDAY
A           REVISION AND/OR LOCK OUT AUTHORIZATION
L           LOCK OUT AUTHORIZATION
→           CORRECTION



1

EMP#: 01054 F BADGE#: 01054
FRANCE CHRISTOPHER

029 ALCOHOL AND DRUG UNIT (NEW)
PAY PERIOD=03/25/07 THRU 04/07/07

| DATE DAY | IN | OUT | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|---|---|---|---|---|---|
| 25SU3 | 10:30 | 7:34 | 8.50 | 8.50 | |
| 27TU3 | 10:32 | 7:07 | 8.00 | 16.50 | |
| 28WE3 | 10:40 | 7:07 | 8.00 | 24.50 | |
| 30FR3 | 7:15 | 7:15 | 0.00 | 24.50 | |
| 3TU3 | 10:43 | 7:14 | 8.00 | 32.50 | |
| 4WE3 | 10:38 | 7:22 | 8.25 | 40.75 | |
| 5TH3 | 10:51 | 7:17 | 8.00 | 48.75 | |
| 7SA3 | 10:33 | 7:21 | 8.25 | 57.00 | |

add 7.75 hrs to 0th
PTO MAR 30
PTO APRIL 2

120

2

NAME PERIOD ENDING
I.D. # DEPT. FILE CARD

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|---|---|---|---|---|---|---|---|---|---|
| 10:55 | | | 7:15 | | | | 7.75 hrs | | |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|---|---|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMPH: 01054 F BADGE#: 01054
FRANCE CHRISTOPHER

029 ALCOHOL AND DRUG UNIT (NEW)
PAY PERIOD=01/15/06 THRU 01/28/06

| DATE | IN | OUT | | ACCUMULATED OVERTIME |
|------|------|------|------|------|
| 17TU3 | 10:44 | 7:10 | 8.00 | 8.00 |
| 18WE3 | 10:06 | 7:15 | 8.75 | 16.75 |
| 19TH3 | 10:53 | 7:18 | 7.75 | 24.50 |
| 21SA3 | 10:28 | 5:30 | 6.50 | 31.00 |
| 22SU3 | 10:41 | 7:12 | 8.00 | 39.00 |
| 23MO3 | 10:55 | 7:30 | 8.00 | 47.00 |
| 26TH3 | 10:54 | 7:15 | 7.75 | 54.75 |
| 27FR3 | 10:20 | 7:07 | 8.50 | 63.25 |

3 = 63.25
PTO = 16.00
TOT = 79.25

#A1181  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL -- (205) 871-7385

www.gregan.com

-202-

| | | | NAME | | PERIOD ENDING | |
|---|---|---|---|---|---|---|
| HAL | DAY SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |

SUMMARY OF CODES:
CODE        DESCRIPTION
*           PAID BREAK
N           NON-WORKING DAY
H           HOLIDAY
A           REVISION AND/OR LOCK OUT AUTHORIZATION
L           LOCK OUT AUTHORIZATION
→           CORRECTION

EMPN: 01054 F BADGEN: 01054
FRANCE CHRISTOPHER

029 ALCOHOL AND DRUG UNIT (NEW)
PAY PERIOD=11/20/05 THRU 12/03/05

| DATE | IN | OUT | | |
|------|------|------|------|-------|
| 22TU3 | 9:53 | 7:13 | 8.75 | 8.75 |
| 25FR3 | 10:55 | 4:00 | 5.00 | 13.75 |
| 27SU3 | 10:49 | 7:15 | 8.00 | 21.75 |
| 28M03 | 10:29 | 7:04 | 8.00 | 29.75 |

3 = 77.75

21 Mon   8 hrs
23 Wed   8 hrs
24 Thu   8 hrs
        8 hrs
1 Thu    8 hrs
2 Fri    8 hrs

#A1181  GORRIE-REGAM AND ASSOCIATES, Birmingham, AL – (205) 871-7306

www.gregan.com

| | | NAME | PERIOD ENDING | |
|---|---|---|---|---|
| I. D. # | | DEPT. | FILE | CARD |

| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|-------|----|----|-----|----|------|------|------|
| | | | | | | | | | |

SUMMARY OF CODES:
CODE     DESCRIPTION
 ☆       PAID BREAK
 N       NON-WORKING DAY
 H       HOLIDAY
 A       REVISION AND/OR LOCK OUT AUTHORIZATION
 L       LOCK OUT AUTHORIZATION
 →       CORRECTION



EMPH: 01054 F BADGE#: 01054
FRANCE CHRISTOPHER

049 NEW HOPES
PAY PERIOD=12/05/04 THRU 12/18/04

| DATE | IN | OUT | WORKED | HOURS | OVERTIME |
|------|------|------|--------|-------|----------|
| 5SU3 | 10:48 | 7:08 | 8.00 | 8.00 | |
| 6MO3 | 10:46 | 7:09 | 8.00 | 16.00 | |
| 7TU3 | 10:45 | 7:12 | 8.00 | 24.00 | |
| 8WE3 | 10:44 | 7:08 | 8.00 | 32.00 | |
| 9 | 10:45 | 7:15 | 8.00 | | |
| 10FR3 | 7:11 | 7:11 | 0.00 | 32.00 | 8.00 |
| 12SU3 | 10:46 | 7:13 | 8.00 | 40.00 | |
| 13 | 10:45 | 7:15 | 8.00 | | |
| 14TU3 | 7:11 | 7:11 | 8.00 | 40.00 | |
| 14TU3 | 10:43 | 7:08 | 8.50 | 48.50 | |
| 15WE3 | 10:42 | 7:11 | 8.00 | 56.50 | |
| 16TH3 | 10:44 | 7:02 | 7.75 | 64.25 | |

3 = 80.25

T = 80.25

EA1181  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL ~ (305) 871-7306

www.gregan.com

| | NAME | | PERIOD ENDING | |
|---|---|---|---|---|
| | I.D. # | DEPT. | FILE | CARD |
| DATE | IN | CODE OUT | HOURS WORKED | ACCUMULATED HOURS OVERTIME |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

EMP#: 011/1 F    BADGE#: 011/1
BANKS MARCIA Y

013 MED/SURG IP UNIT (NEW)
PAY PERIOD=03/25/07 THRU 04/07/07

| DATE | | IN | OUT | | ACCUMULATED | OVERTIME |
|------|--|----|-----|--|-------------|----------|
| 28TH3 | | | | | 8.00 | |
| 28TH7 | | | | | 8.00 | |
| Mistake | 856 | 1133 | | 8.25 | 16.25 | |
| 29TH3 | 314 | 1141 | | 8.00 | 24.25 | |
| 2MO3 | 300 | 902 | | 5.00 | 29.25 | |
| 2MO3 | 845 | 1156 | | 8.25 | 32.50 | |
| 3TU3 | 254 | 1141 | | 8.25 | 40.75 | |
| 4WE3 | 250 | 810 | | 5.00 | 45.75 | |
| 4WE3 | 901 | 1143 | | 7.75 | 49.50 | |
| 5TH3 | 252 | 809 | | 5.00 | 53.50 | |
| 5TH3 | 908 | 1146 | | 7.50 | 55.00 | |
| 6FR3 | 141 | 904 | | 4.25 | 60.25 | |
| 6FR3 | 942 | 1157 | | 7.00 | 63.00 | |

2 = 1150

18   252 - 1148
27 - 249 - 1135
26 - 256 - 1133

#A1101  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL -- (205) 871-3383

046

| | | | NAME | | | PERIOD ENDING | |
|--|--|--|------|--|--|---------------|--|

| | I.D. # | | DEPT. | | FILE | | CARD | |
|--|--------|--|-------|--|------|--|------|--|

| DATE | DAY | DATE | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |
|------|-----|------|-----|------|-----|------|--------------|-------------------|----------|
| | | | | | | | | | |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|------|-------------|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |

# ATTACHMENT 2

EMP#: 01255 F  BADGE#: 01255
BATTLE LEON

027 PSYCHIATRIC UNIT (NEW)
PAY PERIOD=04/22/07 THRU 05/06/07

| DATE | DAY | IN | OUT | | | D/HE |
|---|---|---|---|---|---|---|
| 22SU3 | | 10:45 | 7:18 | 8.00 | 8.00 | |
| 24TU3 | | 10:43 | 7:20 | 8.00 | 16.00 | |
| 25WE3 | | 10:07 | 3:30 | 5.00 | 21.00 | |
| 26TH3 | | 10:49 | 7:12 | 8.00 | 29.00 | |
| 27FR3 | | 10:41 | 7:23 | 8.25 | 37.25 | |
| 28SA3 | | 10:45 | 3:24 | 7.25 | 39.00 | 8.00 |
| 30MO3 | | 10:41 | 7:17 | 8.00 | 48.00 | |
| 1TU3 | | 10:44 | 7:12 | 8.00 | 56.00 | |
| 2WE3 | | 10:35 | 7:05 | 8.00 | 64.00 | |
| 3TH3 | | 10:48 | 7:22 | 8.25 | 72.25 | |
| 4FR3 | | 10:46 | 7:25 | 8.25 | 80.00 | 7.00 |

1H = .50
3 = 77.25

28SA  VAP APPROVED 8 time

#A1181  GORRIE-REGAN AND ASSOCIATES, Birmingham, AL - (205) 871-7368

170

www.gregan.com

| | I.D. # | | DEPT. | | FILE | CARD | |
|---|---|---|---|---|---|---|---|
| DATE | DAY | SHIFT | IN | CODE | OUT | CODE | HOURS WORKED | ACCUMULATED HOURS | OVERTIME |

SUMMARY OF CODES:

| CODE | DESCRIPTION |
|---|---|
| * | PAID BREAK |
| N | NON-WORKING DAY |
| H | HOLIDAY |
| A | REVISION AND/OR LOCK OUT AUTHORIZATION |
| L | LOCK OUT AUTHORIZATION |
| → | CORRECTION |