# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

**MICHAEL BROWN,**
    **PLAINTIFF,**

**V.**

    **CIVIL ACTION NO.:**
    **07-CV-00889-MEF**

**MAXIMUM EFFICIENCY SQUARED, LLC**
**d/b/a Bullock County Hospital,**
    **DEFENDANT.**

## PLAINTIFFS' REPLY BRIEF TO
## DEFENDANT'S OPPOSITION FOR CLASS CERTIFICATION

Arendall & Associates
Attorneys for Plaintiffs
2018 Morris Avenue, Suite 300
Birmingham, AL 35203
205.252.1550 - Office
205.252.1556 - Facsimile

## TABLE OF CONTENTS

Page

I.    Introduction...........................................................................   1

II.    Argument............................................................................   3

      A.   Michael Brown's Role as a Lead Plaintiff is not
          a Conflict of Interest.................................................   3

      1.   Activity by Supervisors.............................................   4

      2.   Brown is not an Employer Pursuant to the FLSA.....   6

      3.   Allegedly Adverse Class Members............................   8

      B.   Plaintiffs are similarly situated, as all have been
          subject to the same policy/practice violations..........   9

III.   Conclusion.........................................................................   17

Certificate of Service..................................................................   18

## I.    INTRODUCTION

Defendant, in this case, has filed an opposition to Plaintiffs' Motion for Conditional Class Certification that contains the standard defense arguments as to why notice should not be granted: a different job title for every five employees (Doc. 26, p. 2: 51 job classifications for 249 people); each job classification has different duties and responsibilities, ignoring its uniform policy applicable to **every** hourly non-exempt employee of an automatic thirty (30) minute deduction for lunch (Doc. 26, p. 4); that an alleged conflict of interest exists to prevent the lead Plaintiff Michael Brown from representing other hourly, non-exempt employees, even though he is only seeking unpaid overtime for himself during the time he was an hourly, non-exempt employee and such compensation was earned **before** he became a manager. (Amended Complaint, ¶9). Defendant also ignored Plaintiff's Amended Complaint that has three named Plaintiffs, Brown, Battle and Davis, not Brown alone. Finally, Defendant makes the typical argument that it has policies and procedures in place to ensure that employees are paid accurately, while disavowing policies contained in the handbook.

Lawyers are simply advocates for their clients. As such, we have to deal with the facts as they come to us from our clients. With sympathy to the opposing counsel regarding certain facts of this case that they are "stuck with," and with

1

appreciation as to how they have attempted to "spin" these hopeless facts, the following is contained on page 5 of Defendant's brief:

> "Since December 2004, employees at BCH have received a copy of the Bullock County Hospital Employee Handbook, a handbook developed and used by the predecessor employee to MES. (Exh. A, Harbaugh Decl. ¶ 5). <u>MES does not fully incorporate all policies and procedures set forth in the Employee Handbook.</u> (<u>Id.</u>) Most notably, although the Employee Handbook states that employees are paid overtime based on an 80-hour bi-weekly period, <u>MES never has followed this particular policy.</u> (<u>Id.</u>) Instead, overtime is calculated based on a standard 40-hour work week." (Emphasis added).

Defendant has stated that employees are required to monitor Defendant's records to insure that they are accurately paid (See Doc. 26, p.3-4), in spite of those requirements being placed on Defendant as the employer (See 29 C.F.R. § 516.2). Defendant states: "employees are aware of this policy of making notations to time cards to accurately reflect their time worked– <u>MES communicated it to them formally through an employee handbook...</u>" (Emphasis added) Defendant then states, as noted above, "MES does not fully incorporate all policies and procedures set forth in the handbook" (Doc. 26, p. 5). Defendant asks this Court to deny Plaintiffs' Motion for Conditional Class Certification even though its employees cannot even rely on the company handbook given to them describing the overtime policy, as Defendant states in its evidence before the Court that it does not even follow some of its Handbook policies.

## II.    ARGUMENT

A.    Michael Brown's Role as a Lead Plaintiff is Not a Conflict of Interest

There is no conflict with Michael Brown seeking to represent a class of employees who are subject to common policies. *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D. NY 1997); *Baum v. Shoney's, Inc.*, 1998 WL 968390 (M.D. Fla 1998). Defendant's time clock system is accessed by each hourly paid supervisor exempt and non-exempt employee as they arrive at work, clock out and in for lunch, and leave at the end of the day. Brown's claims in this action precede his being placed in an exempt position. To the extent any clarification of Plaintiff's Amended Complaint is needed, Brown acknowledges that he was properly classified as an exempt employee when he was a nurse manager. However, prior to his manager position, Defendant properly classified Brown as a non-exempt hourly paid nurse.

Plaintiffs have requested that this Court issue notice to non-exempt employees  hourly paid employees despite Defendant's allegations to the contrary. (Doc. 26, p. 19-20). Aside from the fact that Brown is but one of three named Plaintiffs who seek to represent the proposed class, Brown certainly does not have a conflict prior to taking the position of a manager. During his tenure as a non-exempt employee, Brown had no authority over anyone. As a an exempt employee, he also does not have any conflict. There are disputed questions of fact

3

regarding the discretion of any hourly paid supervisor in regards to alteration of Defendant's time clock system (Supplemental Declaration of Michael Brown attached as Exhibit A).

While Defendant claims that supervisors, such as Brown, had discretion to change the time clock entries to actually pay employees for time they worked, there is a significant difference between authority to <u>access</u> the time system for such purposes versus <u>discretion</u> to change time clock entries. Supervisors perform nothing more than a clerical function in this regard. Supervisors merely follow Defendant's policies and as such would be clearly non-exempt. Supervisors have little to do with those <u>automatic</u> time clock deductions.

In arguing this claimed conflict, Defendant cites only one case from the courts composing the Eleventh Circuit, the non-controlling case of *White v. Osmose, Inc.*, 204 F. Supp.2d 1309 (M.D. Al 2002) (Doc 26, p. 17). The undersigned was the attorney of record in the *White* case, and as such is quite familiar with the facts of that case.[1] The *White* case is clearly distinguishable from the one before this Court.

*1. Activity by Supervisors*

Employees are paid based on their <u>scheduled work shift minus the automatic</u>

---

[1] Other cases cited by Defendant are noted to be out of circuit and/or Title VII cases or §1981 Rule 23 class actions (Doc. 26, p. 18-19).

lunch deduction (PX 6). Defendant established this time-keeping system. Even based on Defendant's best argument, supervisors only fulfill the function of trying to correct an employee's time to see that they are paid in accord with their time clock punch that is designed to underpay them. Defendant's position in regards to supervisors presupposes and acknowledges, without saying so, that Defendant's policy violates the FLSA unless corrected by supervisors.

The supervisors in *White* were not in a similar situation. There, Osmose had to deal with the issues raised by both foreman and crew members. Nothing in the *White* decision defeats the issuance of notice, as shown by the fact that it was issued for foreman. The Court simply limited the notice under the facts of that case to one group without prejudging the right to notice with the other group. Crew members then simply filed a new lawsuit against the same company. The end result was the same.

Even if Defendant was believed in its claim that supervisors had discretion to alter the time clock system, this does not create a conflict with supervisors and non-exempt employees. Defendant has acknowledged that the alteration of the time clock system is to ensure that an employee is paid for time they worked (Doc. 26-2, ¶ 8). In other words, on those occasions that the supervisor-plaintiffs altered the non-exempt employee's time, that employee was paid for time actually worked. On those occasions, the non-exempt employees were not shorted time by the act of

5

the supervisor employees, but instead were assisted in getting paid for time they actually worked and were due to be paid to begin with. The reverse is not an argument in favor of Defendant because no act by a supervisor-plaintiff prevented a non-exempt employee from being properly paid. If unaltered, the automatic time clock system cheated the non-exempt employees out of their properly earned compensation. Defendant cannot claim an act by a supervisor plaintiff had resulted in a violation, however, the time clock system adopted by Defendant is the cause of the FLSA violation.

### 2. Brown is not an Employer Pursuant to the FLSA

Defendant makes the frivolous claim that Brown could be held personally liable for the alleged misconduct (Defendant's Brief, p. 19). Brown is not an employer for the purpose of the FLSA; Defendant's contention is contrary to the law. "Most cases finding corporate officers liable for FLSA violations have involved company-wide underpayment of large numbers of workers. *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986) (citing *Donovan v. Grim Hotel*, 747 F.2d at 972 (177 employees); *Donovan v. Agnew*, 712 F.3d at 1510 (99 employees); *Donovan v. Janitorial Services, Inc.*, 672 F.2d 528, 529-321 (5th Cir. 1982) (violations occurring at three corporations) (emphasis added). Brown does not qualify as a corporate officer. However, Defendant's actions do constitute a company wide underpayment of a large number of workers.

6

"An employer includes any person acting directly or indirectly in the interests of an employer in relation to an employee." 29 U.S.C. § 203(d). The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly, and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986) (citing *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984). In *Patel*, the Court found that individual liability did not attach to an officer because "he did not take such an active role." *Id.* Likewise, in this case, Brown did not take an active role in selecting the time-clock system utilized by Defendant to illegally deduct compensable work time.[2] Brown is not a "'corporate [officer] with a significant ownership interest who had control of significant

---

[2]

See also *Dewitt v. Daley*, 2006 U.S. Dist. LEXIS 2484 [**8] (S.D. Fla. Jan. 13, 2006) ("The law is clear in the Eleventh Circuit that "'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'") (emphasis added); *Escobr v. Orlando Brewing Partners, Inc.*, 2004 U.S. Dist. LEXIS 30709 [*6] (M.D. Fla. 2005) ("this definition of employer includes both the corporate employer and individuals who act as employers in relation to employees. Therefore, 'the overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA.'" (internal citation omitted); *Smith v. Richard's Restoration, Inc.*, 2005 U.S. Dist. LEXIS 35566, [*6] (M.D. Fla. 2005) ("As articulated by the Eleventh Circuit, "the overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. It is a reasonable inference from the facts alleged in the complaint that Defendant (sic), the corporation's President, had operational control of Richard's Restoration, Inc., and thus is jointly and severally liable for Plaintiff's unpaid wages."

aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment' were employers within the meaning of the FLSA." *Id.* Brown's clerical role with time sheets are not the acts of corporate officers who manage the daily functions of Defendant's business direction and long term operations.

### 3.     *Allegedly Adverse Class Members*

Plaintiffs do not seek other exempt supervisors as part of the proposed class. Notice should not be denied based on Defendant's arguments of a potential conflict. This is a claimed potential conflict that has not and will not be realized. Defendant's continued reliance on *White* is misplaced regarding the potential conflict. There the foreman created the time records for his crew members. Judge Albritton issued notice for one group in the *White* case. Nothing in Albritton's Order indicates he would not have issued notice for the crewmen as well. In other words, the substantiative allegations in *White* justified notice. Judge Albritton's Order in *White* came after discovery, and after Plaintiff was held to the more stringent level of a decertification motion, not the lenient standard before this Court on the present Motion. The facts of this case justify notice being issued to all hourly employees of Defendant for the relevant period.

8

Defendant has really attempted to argue in its opposition to Plaintiffs' Motion for Conditional Class Certification a summary judgment issue or a decertification issue. As such, it is inappropriate to be raised at this point in time. Even if Brown were relegated to a sub-class in this litigation, his involvement for the period of time when he was subjected to the same FLSA violations as the other hourly, non-exempt employees preceding his becoming a manager would allow him to participate in the class. There are two other named Plaintiffs who are adequate representatives complaining of the same FLSA violations.

B.    Plaintiffs are similarly situated, as all have been subject to the same policy/practice violations.

Plaintiffs have met their burden of providing the Court with sufficient information necessary to allow the potential class to proceed collectively. Plaintiffs have set forth evidence, and the Defendant has conceded, that there are other employees who wish to opt-in to the present litigation to recover unpaid overtime wages. Defendant sole argument to defeat Court facilitated notice is that the Plaintiffs are not similarly situated.

Defendant's argument against similarly situated is that the Plaintiffs' claims are a fact specific inquiry unsuitable for collective actions. Defendant misplaces the point of class certification. "The focus of this [class certification] inquiry, however, is not on whether there has been an actual violation of law but rather on

9

whether the proposed plaintiffs are similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Kreher v. City of Atlanta*, 2006 U.S. Dist. LEXIS 23094 [*16] (N.D. Ga. March 20, 2006). Every employee of Defendant that is part of the proposed class has a common claim for the violation of the FLSA: "[t]here is one time clock used at Bullock County Hospital." (Doc. 26-2, ¶ 7). In other words, every employee, regardless of job title or classification suffers an automatic lunch deduction each and every shift. Unlike an exemption case, the focus of the FLSA violation in this matter transcends job duties as the violation occurs across the board for each and every employee.3

Defendant's primary authority to dispute that Plaintiffs and other employees are not similarly situated resides in *Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227 (S.D. Ala. 2003). Defendant's argument is incorrect. *Reed* is clearly distinguishable, as the employees in *Reed* worked at several campuses reporting a variety of jobs in terms and duties and responsibilities *Id.* at 1233. In contrast, Plaintiffs in this case work in one location in Bullock County, use a single time clock for recording their time, and the policies complained of, an automatic thirty (30) minute deduction for a meal break is applicable to all time clock employees

---

3
Defendant asserts that Plaintiffs have set forth a "rounding" claim in regard to 29 C.F.R. § 785.48. Defendant's brief appears to draw the conclusion that Plaintiffs claims for pre-shift and post-shift work are based on illegal rounding practices. This conclusion is not unreasonable as rounding and pre-shift, post-shift labor claims often go together, but such is not the case here, as Plaintiff is not asserting a specific rounding claim under the FLSA.

10

(Doc. 26, p. 4, 5). This is in direct contrast to the employees in *Reed* who were denied overtime compensation "for reasons different than the one applicable to the plaintiffs." *Id.* at 1233. All Plaintiffs in the potential class have been denied overtime compensation for the same reason: Defendant's failure to insure they are fully relieved from their work station and work duties for the unpaid meal break in violation of 29 C.F.R. § 785.19.

All four factors discussed in *Reed* are in Plaintiff's favor. Opposing counsel made this same unsuccessful argument in the case of *Anderson v. Cinram*, CV-06-J-1108-NE (N.D. Ala). There, the defendant claimed 237 separate job classifications for 2480 employees. In the case before this Court, Defendant has claimed a ridiculous 51 different job classifications for 249 people (Doc. 26, p. 2). As such, Defendant averages less than five employees with the same particular job title. Judge Johnson found in *Anderson* that an average of 10-1 proved unsuccessful. Defendant's argument of five to one is absurd. If all it took to defeat judicial notice was for employers to present evidence of numerous job titles, there would never be notice issued. Every employer/defendant would simply assign a different job title to each employee like a social security number.

As noted above, the factual inquiry is not the issue at this stage, as the Court in *Kreher v. City of Atlanta* noted that "the focus of this [class certification] inquiry, however, is not on whether there has been an actual violation of law but

11

rather on whether the proposed plaintiffs are similarly situated' under 29 U.S.C. §
216(b) with respect to their allegations that the law has been violated." 2006 U.S.
Dist. LEXIS 23094 [*16] (N.D. Ga. March 20, 2006). The *Kreher* Court also
noted that the following:

> "Plaintiffs' allegations and testimony, *in their totality*, demonstrate the
> members of the proposed class were treated similarly in their alleged
> denial of overtime pay. "A connection among various employees'
> claims sufficient to support permissive joinder under Federal Rule of
> Civil Procedure 20(a) establishes that the employees are similarly
> situated for purposes of Section 216(b). Because a pattern or practice
> satisfies the same transaction or occurrence requirement of Rule
> 20(a), it also satisfies Section 216(b)." *Reed v. Mobile County Sch.
> Sys.*, 246 F. Supp. 2d 1227, 1233 n.10 (S.D. Ala. 2003) (citation and
> quotation omitted) (noting a pattern or practice of not paying
> employees earned overtime compensation would satisfy the similarly-
> situated requirement).    See also *Grayson*, 79 F.3d at 1095
> ("Essentially we hold that the similarly situated' requirement of §
> 216(b) is more elastic and less stringent than the requirements found
> in Rule 20 (joinder) and Rule 42 (severance).")"

*Id.* at [*17, n.11]. The Court in *Kreher* held that the Defendant's opposition to
class notice was in fact an attack on the merits of the plaintiff's claims. **Notice was
granted** in the *Kreher* case.   The element of *Reed's* first factor, job title, is
certainly in Plaintiff's favor as the nature of the violations is common to all
potential job titles.

Factor (2) of *Reed*, requiring that Plaintiffs work in a similar location is in
favor of granting notice: all Plaintiffs and the potential class work in the same
geographic location of Bullock County, Alabama. *Id.* at 1232. The fact that the

employees not only work in the same location, but also utilize the exact same time clock heightens and increases this factor in Plaintiffs' favor. Any contention by Defendant that this factor weighs against granting notice is without merit.

Factor (3) of *Reed*, is also in favor of granting notice. *Id.* The policy is implemented the same whether it be one or a hundred decision makers. However, Defendant's evidentiary submissions show there are automatic deductions of time for hourly non-exempt employees regardless of shift times. For example, Plaintiff Michael Brown's time card for 3/11/07-3/24/07 shows two general shifts, 2:25-10:55 and 7:00-7:00. (Doc. 26-2, p. 12). These general work shifts still result in an automatic meal deduction as the 8 ½ hours worked on March 11, shows a thirty minute deduction and the 12 ½ hours worked on March 21, shows a forty-five minute deduction. Plaintiff Carold Battle's time cards show the violation occurs regardless of the shift time. Her time card from April 22, 2007 through May 5, 2007 reflects two separate shifts: an afternoon shift starting at 2:30 and an evening or morning) shift starting at 6:30. Specifically on April 24 2007, Plaintiff Battle worked from 2:40 to 12:19 or 9 hours and 39 minutes, but the time card reflects a deduction of time and pays her for only 9 hours. (Doc. 26-2, p. 21). On the same time card, a different shift is worked by Plaintiff Battle on April 29, 2007 from 6:35 to 11:29 or 16 hours and 54 minutes. Plaintiff is only paid for 16.00 on her time card. Defendant's argument under Reed's (3) factor that different time

periods and different decision-makers weigh against granting notice is misplaced. The decision-maker for deducting time is a machine, and Defendant's own exhibits show that the shifts worked by an employee is irrelevant, because the time is always deducted.[4]

Defendant in essence claims that Factor (4) requires that individualized inquiry would need to be made, thus precluding notice. (Doc. 26, p. 16). Defendant has conceded that the meal period is automatically deducted. (Doc. 26-2, ¶ 7). Defendant contends that a collective action is inappropriate because individualized inquiries will be required as to each plaintiff's treatment by various supervisors with respect to working off the clock. Aside from tacitly acknowledging the breadth of this aspect of its FLSA violations, Defendant's argument here is without merit. While a collective action may be denied where "the action arises from circumstances purely personal to the plaintiff," but it may not where it arises from "any generally applicable rule, policy, or practice." *Williams v. Accredited Home Lenders, Inc.*, 2006 WL 2085312, *4 (N.D. Ga. 2006) (quoting *England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 507 (M.D. La. 2005). *Accord Johnson v. TGF Precision Haircutters, Inc.*, 2005 WL 1994286, *3, n. 3 (S.D. Tex. 2005) (allegations of existence of a "common policy

---

4Plaintiffs are not waiving a willfulness allegation as an employee for Defendant willfully set up the time clock to permit these deductions.

14

violating the FLSA" permitted conditional class certification with option to decertify later). See also *Robins-Bagle, et al v. Puckett, Inc.*, 2006 LEXIS 85253 (M.D. Fla. 2006). In *Pendlebury, et al v. Starbucks Coffee Company*, 2005 U.S. Dist. LEXIS 574 [*10] (S.D. Fla. 2005), the court stated:

> See *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676 (D. Kan. 2004) ("The court will examine the individual plaintiffs' disparate factual and employment settings, as well as the various defenses available to the defendant which appear to be individual [*11] to each plaintiff, during the 'second stage' analysis after the close of discovery."); *Leuthold v. Destination America*, 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class"); *Goldman v. Radioshack Corp.*, 2003 U.S. Dist. LEXIS 7611, No. Civ.A. 2:03-CV-032, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003) ("A fact specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant."); *Felix De Asencio v. Tyson Foods, Inc.*, 130 F.Supp. 2d 660, 663 (E.D. Pa. 2001) ("While this information [submitted by Defendant] may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question."). See also *Scott v. Heartland Home Finance, Inc.*, 2006 U.S. Dist. LEXIS 28839 [#11-13] (N.D. Ga. 5/3/06); *Denassia, et al v. Duane Reade, Inc.*, 2006 U.S. Dist LEXIS 73090 (S.D.N.Y. 10/4/06).

Plaintiffs contend that defendant had a practice of working Plaintiffs and other similarly situated employees "off the clock" in deducting thirty minutes of pay for lunch even when they do not take thirty minutes (which requires no individualized inquiry) and in performing pre-shift and post-shift duties. Defendant argues on pages 13 and 14 of its Brief, that the fact that Plaintiffs have

honestly specified that they do not work off the clock every pre and post shift somehow negates the need for conditional class certification. Frankly, this is irrelevant at this stage of the proceedings. Conditional Certification is due to be granted because of Defendant's **admitted policy** of an automatic deduction for meal periods (Exhibit A to Defendant's Declaration, p. 4 of Defendant's Brief). Where Plaintiffs have made substantial allegations of FLSA violations based upon an admitted company-wide policy, conditional certification is appropriate (*Damassia*, 2006 Dist. LEXIS 73090 [*9]. This requires no individualized inquiry. Again, the common element is Defendant's time clock that deducts time on a daily basis at the Bullock County location, regardless of which shift, job title or supervisor, is a violation of 29 C.F.R. § 785.19. Plaintiff's factual averment 12 of Plaintiff's principal brief states as follows:

> 12.    Each Plaintiff was subjected to the policy and practice of Defendant of losing thirty minutes pay for a meal, without being fully relieved of work duties or work stations for each such work day in which the deduction was made (PX1,¶6; PX2-4, ¶ 7).

Defendant's own Exhibits support the granting of notice, as improper deductions occurred on various shifts, for all manner of the current plaintiffs, and occurred through a common time clock in a specific, centralized location (Defendant's Brief, p. 3). The combination of Defendant's admitted policy, together with Plaintiffs' substantial allegations defeat Defendant's argument at this stage of the

16

proceeding (*Kreher*, 2000 U.S. Dist. LEXIS 23094 *4 n. 8 and 9).

## III.    CONCLUSION

Review of opposing counsel's firm's arguments in *Anderson* and in *Harris v. Glasforms*, 06-cv-00402-LSC show that the same unsuccessful arguments were made opposing motions for conditional class certification.    Different defense counsels have made similar arguments in the other cases cited in Plaintiffs' primary briefs (pages 19 and 20).    None can overcome the standard by which this Court must judge this motion, the lenient standard set forth in *Hipp v. Liberty National Life Insurance Company*, 252 F.3d 1208, 1218 (11th Cir. 2001); *Moody v. Aramcosen's Company*, 54 F.3d 1207, 1214 (11th Cir. 1995).    Plaintiff refers the Court to its primary brief for further such authority.

Plaintiffs have shown that they are similarly situated to Defendant's common policy of not ensuring compliance with 29 U.S.C. § 785.19, and otherwise suffering and permitting Plaintiffs and those whom they seek to represent to work off the clock pre-shift and post-shift in violation of the FLSA. Plaintiffs have shown that others, similarly situated, to the same policy violations seek to join this matter, when Plaintiffs only access to notifying such individuals was simply word of mouth. In the undersigned's experience, the most compelling response to the **exact identical violations** was found in *Cowan v. Talladega Healthcare*, CV-06-BE-0910-E, where over fifty percent of those to whom notice

17

was sent opted in alleging similar violations. Plaintiffs similarly seek to give such individuals likewise effected by this Defendant's FLSA violations, and by its ambiguous policies that it elects to follow sometimes, but not with others without bothering to tell employees,  be alerted to their rights under the law.

Respectfully submitted,

/s/ David R. Arendall

_____

David R. Arendall
Counsel for Plaintiff

OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, AL 35203
205.252.1550 – Office; 205.252.1556 – Facsimile

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

M. Jefferson Starling III, Esq.

/s/ David R. Arendall

_____

Of Counsel

18

# EXHIBIT A

# TO PLAINTIFF'S

# REPLY BRIEF

# DECLARATION OF MICHAEL BROWN

1.    My name is Michael Brown. I am over the age of 19 years. I reside in Montgomery, Alabama.

2.    As Nurse Manager, I was in essence a charge nurse, but was not a departmental manager. The department manager, sometimes referred to as a program director, was Celso Backus from my department.

3.    My responsibilities in regards to time records for my subordinates was to simply total up the time shown on their time cards. Celso and I were asked to tabulate the time cards total for approximately one month. If I knew of errors and malfunctioning time clock, I would add those hours back in. I had to get approval for one of my subordinates to work overtime. That approval came from Kay Melnick, the Director of Nursing.

4.    I did not exercise any discretion in approving overtime or for an employee to be paid if they worked through lunch.

5.    My role in the payroll/overtime system of Defendant was as I have stated above, then to send the time cards to payroll for processing and payment.

I declare under penalty of perjury that the above is true and correct.

Executed this ___Feb 21, 2009___ (date).

_____Michael Brown_____
Michael Brown